IN RE the MARRIAGE OF: Jacqueline J. KENNEDY, Petitioner-Respondent,

v.

John W. KENNEDY, Appellant.

Court of Appeals

*No. 87–2110. Submitted on briefs March 4, 1988—Decided May 12, 1988.*

(Also reported in 426 N.W.2d 85.)

For the appellant the cause was submitted on the briefs of *Gilbert D. Sedor,* and *Sedor & Hoag, S.C.,* of Janesville.

For the petitioner-respondent the cause was submitted on the brief of *Daniel T. Dillan,* and *Nowland & Mouat,* of Janesville.

Before Gartzke, P.J., Eich and Sundby, JJ.

SUNDBY, J.   John Kennedy appeals from the maintenance and property division provisions of a divorce judgment.[1] He claims that the family court should have denied maintenance or left the award of maintenance open. He also contends that the family court abused its discretion in failing to factor the value of John's pension benefits into the property division or the maintenance award, or both. We

---

[1]We construe John's notice of appeal to involve the property division as well as the maintenance award. He argues that the value of Jackie's interest in his pension benefits should have been considered in the property division.

reverse the maintenance award and affirm the property division.

## I.

## BACKGROUND OF THE CASE

Jackie and John were married in 1960. No children were born of the marriage. At the time of trial, John was forty-nine years of age and Jackie, fifty-four. Both were long-term employees of their respective employers and were participants in their employer's pension plans.

The family court divided the marital estate equally. The court divided the pension plans giving each party an interest in the other's pension plan. The judgment constituted a domestic relations order.[2] The court awarded Jackie maintenance of $100 per week for an indefinite term.

## II.

## MAINTENANCE

"The determination of the amount and duration of maintenance is entrusted to the sound discretion of

---

[2]A qualified domestic relations order (QDRO) authorizes the direct invasion of a participant's pension for the benefit of the non-participant spouse. A QDRO permits payment of benefits of a qualified private retirement plan to one other than the employee, at the employee's earliest retirement date. *See* I.R.C. sec. 414(p)(4)(A) (Supp. III 1985). For a discussion of qualified domestic relations orders, *see* Miers, St. Ville and Schaunaman, *The Division of Pension Benefits in Divorce: "You Can Have the Condo, and I'll Take a QDRO,"* 57 Okla. B. J. 2601 (1986). *See also Marriage of Schinner v. Schinner,* 143 Wis. 2d 81, 86 n. 1, 420 N.W.2d 381, 383 (Ct. App. 1988).

the circuit court, and this court will not disturb the determination of the circuit court unless the circuit court abuses its discretion." *In re Marriage of La-Rocque,* 139 Wis. 2d 23, 27, 406 N.W.2d 736, 737 (1987). The exercise of discretion, however, must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination. *Id.* The "touchstone" of analysis in determining or reviewing a maintenance award is the list of statutory factors enumerated in sec. 767.26, Stats. *Id.* at 32, 406 N.W.2d at 740. "They reflect and are designed to further two distinct but related objectives in the award of maintenance: to support the recipient spouse in accordance with the needs and earning capacities of the parties (the support objective) and to ensure a fair and equitable financial arrangement between the parties in each individual case (the fairness objective)." *Id.* at 32–33, 406 N.W.2d at 740.

We conclude that the family court abused its discretion in this case by failing to apply the applicable statutory factors and by not giving full play to the objectives of maintenance. The court properly considered John's ability to pay but based its decision that Jackie should be awarded maintenance solely on the post-divorce disparity of income between John and Jackie. The family court stated: "The future will hold that [Jackie's] ability to earn anywhere near the amount of income that Mr. Kennedy is presently earning and will earn is extremely remote."

The family court attempted to equalize the post-divorce income between the parties. It is appropriate in a marriage of many years to consider an equal

division of total income as a starting point in determining maintenance. *LaRocque,* 139 Wis. 2d at 39, 406 N.W.2d at 742. However, the family court did not discharge its decisionmaking responsibility with respect to maintenance simply by equalizing or attempting to equalize the post-divorce income between the parties. That mechanistic approach does not satisfy either goal of maintenance.

The support objective of maintenance is fulfilled when the trial court considers the feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage and the length of time necessary to achieve this goal, if the goal is feasible. *LaRocque,* 139 Wis. 2d at 35, 406 N.W.2d at 740–41. The family court gave no consideration to this feasibility or the length of time necessary to achieve the goal.

What will satisfy the fairness objective of maintenance must be determined on a case-by-case basis, considering the statutory factors enumerated in sec. 767.26, Stats. Basically, however, the fairness objective is satisfied if maintenance is used, if necessary, to ensure a fair and equitable financial arrangement between the parties. *See LaRocque,* 139 Wis. 2d at 33, 406 N.W.2d at 740.

Considering both the support and fairness objectives of maintenance, we are left with the nagging question why $100 per week for an indefinite term is a proper maintenance award under sec. 767.26, Stats., and the facts and circumstances of this case. The family court did not answer this question satisfactorily and therefore we conclude that it abused its discretion. We therefore reverse the family court's award of maintenance to Jackie, and remand the matter to the family court for further consideration.

Jackie argues that the family court made the right decision for the right reasons, although it did not reiterate its thinking in its memorandum decision. She claims that we are required to search the record and affirm if the family court's conclusion are supported by evidence that is not clearly erroneous. *In re Marriage of Liddle v. Liddle,* 140 Wis. 2d 132, 150–51, 410 N.W.2d 196, 204 (Ct. App. 1987). We may search the record to supply a fact missing from the family court's decision which supports that decision. We may not, however, exercise the family court's discretion. *LaRocque,* 139 Wis. 2d at 43, 406 N.W.2d at 744.

## III.

## PENSION BENEFITS

John does not challenge the family court's discretion to subject each party's pension to a domestic relations order in favor of the other party. He contends, however, that the immediate value of Jackie's interest in his pension under the domestic relations order "should be factored into the equation for either property division and/or maintenance."

## A.

Under the domestic relations order, Jackie is entitled to an immediate monthly benefit from John's pension of $273 per month. The parties' experts agreed that as of the date of trial the value of her interest in John's pension was $32,642.

John argues that Jackie obtains a greater share of the marital estate because her ability to receive immediate benefits from John's pension plan has a

present value which John's interest does not have because he is not presently eligible for such benefits. However, if John retired, as he may, he would be immediately eligible for benefits from his pension. John's pension expert testified that if John retired immediately, his basic pension benefits would have a value of $71,848 and his supplemental benefits approximately $30,000. We therefore do not see any unfairness to John in dividing the parties' pension benefits by a domestic relations order. Once the trial court elects to use a domestic relations order for this purpose, the present value of the parties' interests in each other's benefits is thereafter irrelevant to the property division. We therefore affirm the division.

## B.

John also argues that the immediate value and availability of Jackie's interest in John's pension benefits should be considered in determining the maintenance issues. With the amount Jackie will receive annually from John's pension benefits included in her total annual income, John argues that the difference between his income and Jackie's is negligible.

Section 767.26(3), Stats., requires the family court to consider the property division in awarding maintenance. *Bahr v. Bahr,* 107 Wis. 2d 72, 80, 318 N.W.2d 391, 396 (1982), recognized the close relationship between maintenance and property division and held that a substantial error in the division required reconsideration of a maintenance award.

However, in *Pelot v. Pelot,* 116 Wis. 2d 339, 345–46, 342 N.W.2d 64, 67 (Ct. App. 1983), we held that the husband to whom had been assigned his

pension plan as part of the property division, should receive the full value of the plan before his pension benefits could be considered income. Whether or not the periodic distributions to Jackie of her interest in John's pension benefits under the domestic relations order are income for purposes of taxation, those distributions are, in actuality, payment to her of a part of her share of the marital estate. As such, those payments are not income to her in determining the maintenance issues.

The *LaRocque* court considered a contention similar to John's. The family court, by implication, had suggested that Mrs. LaRocque use the proceeds from the sale of the house—her share of the property division—to support herself. *Id.*, Wis. 2d at 34, 406 N.W.2d at 740. The court disagreed with this suggestion. The court stated:

> It is difficult to understand why, and the circuit court does not explain why, Mrs. LaRocque should liquidate her capital to obtain funds to pay living and retraining expenses, while Mr. LaRocque retains full use of his $60,000 a year salary and keeps his retirement fund (the property he received in the property division) untouched and secure for his retirement years. The property division should provide Mrs. LaRocque as well as Mr. LaRocque with a nest egg for retirement or a reserve for emergencies.

*Id.* at 34–35, 406 N.W.2d at 740.

Jackie should not be obliged to invade or exhaust her property division to support herself if John's income is sufficient to provide her with maintenance meeting the *LaRocque* objectives of support and

fairness. We therefore reject John's contention that the payments to Jackie from his pension benefits must be "factored into the equation" in deciding Jackie's maintenance claim.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded for proceedings consistent with this opinion.