IN RE the MARRIAGE OF: Robert J. ENDERS,
Petitioner-Respondent,

v.

Susan J. ENDERS, Respondent-Appellant.

Court of Appeals

*No. 88–0218. Submitted on briefs May 31, 1988.—Decided
October 18, 1988.*

(Also reported in 432 N.W.2d 638.)

139

For the appellant there were briefs by *Benjamin D. Proctor* of Eau Claire.

For the respondent, there was a brief by *Cindra R. Carson,* of *Hertel, Carson, White, Schilling & Barr, S.C.* of Eau Claire.

Before Cane, P.J., Myse and Sundby, JJ.

MYSE, J.  Susan Enders appeals a judgment granting the parties a divorce. The trial court divided their property and debts, granted Robert Enders custody of their two minor children, and awarded Susan $700 maintenance for six months and $1,000 thereafter for an indefinite period of time.[1] The court

---

[1]The initial reduction in maintenance was used to equalize the property division.

also denied both parties' requests for contribution toward their attorney fees.

Susan makes three arguments. First, she attacks the court's maintenance determination by asserting that it erred by using Robert's net income rather than gross income, by subtracting an inappropriate amount for child support before awarding maintenance, and by failing to consider the tax consequences that the maintenance award would have to the parties. Second, Susan alleges that the trial court abused its discretion by considering her past alcohol problems in making its maintenance determination. Third, she contends that the court abused its discretion by denying her request for contribution toward her attorney fees. We reject her arguments and affirm the judgment.

The parties were married in June, 1969, and they have two children. They were separated in May, 1987, at which time Susan was thirty-six years old and Robert was thirty-eight years old. At the time of the divorce, Susan, who had a high school education, was working about fifteen hours a week as a secretary. Robert, who attended college for two years, has been a salesman for a medical supply company for thirteen years.

The court divided their property on an equal basis, with Susan receiving about $45,700 and Robert receiving about $43,900 in cash and property. The trial court adjusted the maintenance award for six months to equalize the property division because Susan received $1,800 more than Robert in the property division. Robert received the homestead but also assumed the entire marital debt of $111,900. Pursuant to a stipulation by the parties, Robert was also granted custody of the two children.

We review a maintenance determination as a challenge to the trial court's exercise of discretion and will affirm the trial court unless we find an abuse of discretion. *Harris v. Harris,* 141 Wis. 2d 569, 573, 415 N.W.2d 586, 588 (Ct. App. 1987). The trial court does not abuse its discretion if its determination reflects a reasoned approach based upon proper considerations of law and articulates reasons for its conclusion. *Steinke v. Steinke,* 126 Wis. 2d 372, 383, 376 N.W.2d 839, 845 (1985). The object of a maintenance determination is to leave each party with adequate means of support and to treat each party fairly and equitably. *LaRocque v. LaRocque,* 139 Wis. 2d 23, 32–33, 406 N.W.2d 736, 740 (1987).

To fully understand Susan's challenge to the trial court's determination it is necessary to describe how the trial court reached its decision that $1,000 per month for an indefinite period of time was an appropriate maintenance award. Robert's earnings consisted of both a base salary and bonuses that were determined on the basis of the amount of his sales in the preceeding quarter. While he earned over $80,000 in 1985, and over $90,000 in 1986, the trial court found that he incurred substantial expenses for necessary travel, meals, and lodging to create this income. On his 1986 income tax returns he deducted over $20,000 in business expenses.

The court deducted some, but not all, of these expenses, as well as some amount for state and federal taxes, from Robert's total earnings before determining maintenance. The court apparently reasoned that because these amounts were not available for his use in maintaining himself, Susan, and the children, or in discharging the substantial marital indebtedness he

incurred in the divorce judgment, they should not be considered in the maintenance determination.

The trial court concluded that Robert had a net income of $5,000 per month that was available for the support of himself, his two children, and maintenance payments to Susan.[2] Because he was awarded custody of the two children, the trial court determined that a suitable sum representing expenses necessarily incurred in the support of the two minor children should be deducted from the $5,000 before calculating the appropriate amount of maintenance payments to Susan.

Given the nature of their lifestyle, Robert's annual earnings, and the balance of the statutory factors the court concluded that the actual cost of maintaining the two children in a manner consistent with their lifestyle prior to the divorce was $1,500. The court then deducted that amount from Robert's $5,000 per month net earnings.

This left $3,500 available for the support and maintenance of Robert and Susan. The trial court divided the $3,500 equally between Robert and Susan, leaving $1,750 for each, from which the court deducted Susan's expected net monthly income of $675. After rounding the figures off, the court awarded Susan maintenance of $1,000 per month.

Susan challenges the trial court's maintenance determination in three different respects. First, Susan contends that the trial court must as a matter of law apply the fifty-fifty presumption at the gross income

_____

[2]The trial court apparently subtracted some, but not all, of Robert's expenses and taxes in arriving at a figure of $5,000 as his monthly "net" income. Subtracting business expenses of $20,000 plus state and federal taxes would have resulted in a net income of less than $5,000.

level. This would have resulted in her receiving $4,000 per month maintenance for an indefinite period of time, minus child support payments calculated on the basis of her income. However, this would have left Robert with only $4,000 per month from which he would be required to pay taxes on his own salary, discharge marital debts of over $110,000, pay all expenses necessary to produce his income, and contribute to the support of the two children as well as support himself. Susan, on the other hand, would receive $4,000 per month maintenance payments plus such earnings as she produced to support herself less child support payments.

*LaRocque* requires a fairness factor in calculations such as those challenged here. There are several factors that indicate a maintenance award of $1,000 per month for an indefinite period of time is fair. While this case involves an eighteen-year marriage, Susan was only thirty-six years old at the time of the divorce. Robert earns a substantial income but has incurred substantial financial obligations as well. Susan is able to leave the marriage with no financial obligations, a substantial amount of property based on the property division, and at least a $1,000 per month income for potentially the rest of her life. In addition, the record establishes that her anticipated earnings are from $10,000 to $11,000 per year.

Essentially Susan argues that *LaRocque* requires that the trial court begin its analysis by dividing the parties' gross income in half. However, *LaRocque* mandates an approach, not a result. It articulates factors that the trial court must consider in achieving an appropriate amount of maintenance to be paid by one spouse to another after a long-term marriage to

ensure that the end result is fair and equitable to each party.

There is no rule of law in Wisconsin stating that a recipient spouse is entitled to one-half of the other's salary for the rest of his or her life. *LaRocque* mandates that the trial court consider the parties' gross income at the time it determines maintenance, not that the gross income be used to calculate maintenance in some mechanical way. *LaRocque* is not a limitation on the trial court's exercise of discretion as long as the court properly considers the appropriate factors. Because of the significant expenses associated with the creation of Robert's gross income, we conclude that the trial court did not abuse its discretion when it calculated maintenance based on his net rather than gross earnings.

The dissent contends that *LaRocque* mandates a lock step formula that trial courts must use in determining maintenance. Such a mandate is the antithesis of discretion. The actual method used by the trial court is within the court's discretion because it was a reasoned analysis resulting in a fair conclusion. As long as the analysis is reasonable and the result is fair, we will uphold such an exercise of discretion.

Susan next challenges the trial court's deduction of $1,500 from Robert's income for the support of the minor children before it calculated maintenance. The fact that a father is awarded custody of minor children has a direct relationship to how much maintenance he can pay. *Hirth v. Hirth*, 48 Wis. 2d 491, 496, 180 N.W.2d 601, 604 (1970). Susan argues that the trial court's approach in reality requires her to pay child

145

support long after the children reach majority.[3] However, the trial court did not issue a child support order against Susan, a fact it considered when setting the maintenance award. The approach used by the trial court is unusual and, while we conclude it is not an abuse of discretion, it is not an approach we recommend to trial judges.

Although there may be merit in Susan's contention, it is based on the assumption that the trial court is not required to reexamine the maintenance issue once the children reach majority. Section 767.32 governs the modification of maintenance awards. When faced with the responsibility of issuing orders effective for a prolonged period of time, the trial court may anticipate changes in circumstances that are certain to occur, and enter an order reflecting such changes. However, a court also has the option of postponing a decision until the anticipated event actually occurs and then reexamining the issue based upon the circumstances occurring when the children reach majority. The critical point is whether the trial court took the factor alleged to have changed into account when it made its initial decision. *See Erath v. Erath,* 141 Wis. 2d 948, 954, 417 N.W.2d 407, 409–10 (Ct. App. 1987).

While the trial court's approach was within its discretion, its failure to address the appropriate amount of maintenance once the children reach their majority means that the trial court must regard majority of the children as a change of circumstances,

---

[3]Child support obligations may extend until the child reaches age nineteen or is no longer pursuing a high school diploma, whichever occurs first. Sec. 767.25(4), Stats. However, for the purpose of clarity we will hereafter refer to the termination of support as being the time the child reaches majority.

entitling Susan to a reexamination of the appropriateness of her maintenance award. *See* sec. 767.32, Stats. Whether she is entitled to a modification is a function of the trial court's discretion based on the circumstances in existence at that time. Susan's ability to bring a motion under sec. 767.32 once this change in circumstances actually occurs resolves her contention that she will be in fact contributing to the support of the children when she and Robert no longer have a legal responsibility to do so.

Contrary to what the dissent states, we are not forcing Susan to go into court in the future to correct a present error because of our conclusion that there is no present error. The error, if any, would occur only after the children reached majority if the trial court refused to consider this event a change in circumstances under sec. 767.32.

■ Susan also argues that the trial court abused its discretion by not considering the tax consequences of the maintenance award and by not crediting her with tax savings that Robert will enjoy because he can deduct part of the maintenance payments from his income. We disagree. The trial court was very much aware of the tax consequences of its determinations, which the record reflects. The court considered tax consequences in arriving at Robert's "net" income and expressly stated that it realized that while fully deductible by Robert, the maintenance payments were fully taxable to Susan. We reject Susan's argument because it is based on a hypothetical maintenance award rather than the award she actually received.

Given the length of time over which maintenance was ordered, Susan's age and earning capacity, Robert's level of indebtedness, and the requirement that

the court reexamine the question of maintenance when circumstances regarding the children have changed, we conclude that the fairness objectives articulated in *LaRocque* have been met by the court's award. Indeed, Robert could draw the fairness issue into question because he is being required to pay $1,000 per month for the rest of a thirty-six-year-old woman's life even though she is no longer contributing to the production of his income, the creation of a marital estate or the financial, emotional, or physical well-being of the primary wage-earner. While Robert may well complain that it is unfair for him to support a former spouse for life, we view the trial court's order as essentially within the broad parameters of fairness for both parties.

Next, Susan argues that the trial court abused its discretion by considering her past alcohol problems when making its maintenance determination. We disagree. While the trial court did allude to Robert's allegations that Susan's alcohol problems resulted in her contributing little for a period of time during the marriage, at the final hearing the court rejected this argument. The court fully explained how it reached its determination, and this factor was not reflected in the court's analysis. There is simply no evidence that the trial court relied on Susan's past alcohol problems when making its determination.

Finally, Susan claims that the trial court erred by failing to require Robert to make a contribution toward her attorney fees. Section 767.262 provides that the court may, after considering both parties' financial resources, order either party to pay a reasonable amount for the other's attorney fees. This issue is submitted to the sound discretion of the trial court.

*Kastelic v. Kastelic,* 119 Wis. 2d 280, 290, 350 N.W.2d 714, 719 (Ct. App. 1984).

We will uphold a trial court's discretionary decision if we can conclude ab initio that there are facts of record that would support the trial court's decision had discretion been exercised on the basis of those facts. *Conrad v. Conrad,* 92 Wis. 2d 407, 415, 284 N.W.2d 674, 678 (1979). The record supports the trial court's conclusion that each party pay his or her own attorney fees. Susan received $1,000 per month maintenance, as well as a substantial amount of property, including cash. In addition, she had an anticipated income of $10,000 to $11,000 per year. Robert, while having a higher income than Susan, also incurred more financial obligations than she as a result of the divorce. Under these circumstances, it is reasonable for the trial court to determine that each party should pay his or her attorney fees. Susan's assets, earnings and maintenance payments are sufficient for her to discharge her own obligation toward counsel.

Finally, we deny Robert's motion to have this appeal declared frivolous under sec. 809.25(3), Stats. Given the changing law in this area, we cannot conclude that the appeal was frivolous.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*dissenting*). On this appeal, we revisit *In re Marriage of LaRocque,* 139 Wis. 2d 23, 406 N.W.2d 736 (1987). Because I do not agree with the majority that the trial court's determination of maintenance conforms to *LaRocque,* I respectfully dissent.

I read *LaRocque* to hold that, in a marriage of relatively long duration, the trial court must make an effort to assure, to the extent possible, that the

149

standard of living of both parties after the divorce is comparable to the standard they enjoyed during the marriage. The trial court must apply the equitable distribution-partnership concept of marriage which recognizes the contribution of both spouses to the marriage. *See In re Marriage of Wierman v. Wierman,* 130 Wis. 2d 425, 440, 387 N.W.2d 744, 750 (1986). While the *Wierman* court applied this concept to the division of the marital estate, it is apparent from *LaRocque* that the court intends that the same concept shall apply to the determination of maintenance. The *LaRocque* court stated: "Over a long marriage the parties each contribute to the stream of income as marital partners and should share the rewards." 139 Wis. 2d at 39, 406 N.W.2d at 742.

The following from *LaRocque* emphasizes the partnership concept, particularly in a marriage of long duration:

> Because the wife's contribution in this marriage was as homemaker and the husband's as wage-earner, the husband leaves the marriage with the "asset" of a stream of income which the wife's contributions helped him to develop. The wife, however, does not leave the marriage with a stream of income; a career as homemaker—although of economic value to the family and society—all too frequently does not translate into money-making ability in the marketplace.

*LaRocque,* 139 Wis. 2d at 38, 406 N.W.2d at 742. Having made this observation, the court then stated that "when a couple has been married many years and achieves increased earnings, it is reasonable to consider an equal division of total income as a starting point in determining maintenance." *Id.* at 39, 406 N.W.2d at

742. I see no escape from the conclusion that *La-Rocque* requires application of the equitable distribution-partnership concept of marriage to the stream of income "asset" which the wage-earner spouse has developed, with the assistance of his or her partner, during the marriage.

How is the trial court to apply the equitable distribution-partnership concept to the determination of maintenance? *LaRocque* requires satisfaction of the support and fairness objectives of maintenance. The *LaRocque* court stated that the statutory factors, sec. 767.26, Stats., "reflect and are designed to further two distinct but related objectives in the award of maintenance: to support the recipient spouse in accordance with the needs and earning capacities of the parties (the support objective) and to ensure a fair and equitable financial arrangement between the parties in each individual case (the fairness objective). *La-Rocque,* 139 Wis. 2d at 33, 406 N.W.2d at 740.

The *LaRocque* court related the support objective to the parties pre-divorce and post-divorce standard of living.

> "While sec. 767.26(6)[, Stats.,] requires the circuit court to consider the parties' pre-divorce standard of living in awarding maintenance, we disagree with the circuit court's application of this statutory factor. Sec. 767.26(6) requires the circuit court to consider the feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage and the length of time necessary to achieve this goal if the goal is feasible. The legislature thus has expressly declared that *the standard of living for maintenance is a standard of living comparable to the one enjoyed during the marriage. In other words, the*

151

> *goal of maintenance is to provide support at pre-*
> *divorce standards, and this goal may require that*
> *the recipient spouse be awarded maintenance above*
> *bare subsistence needs.*

*Id.* at 35, 406 N.W.2d at 740–741 (emphasis added) (citation omitted).

How is the trial court to determine the parties' pre-divorce standard of living? The *LaRocque* court quoted *Bahr v. Bahr,* 107 Wis. 2d 72, 84–85, 318 N.W.2d 391, 398 (1982) as follows:

> It would seem reasonable for the trial court to begin the maintenance evaluation with the proposition that the dependent partner may be entitled to 50 percent of the total earnings of both parties. This percentage may, as in the case of property division, be adjusted following reasoned consideration of the statutorily enumerated maintenance factors.

*LaRocque,* 139 Wis. 2d at 39, 406 N.W.2d at 742.

In this case, the trial court considered only the husband's net income after deducting $20,000 in business expenses and the 1986 income taxes as shown on the parties' 1986 income tax returns. The trial court thus rejected "total earnings of the parties" as the starting point for determining maintenance.

If, as the *LaRocque* court has said, the goal of maintenance is to enable the dependent partner (note the use of the word partner) to enjoy a standard of living reasonably comparable to that enjoyed during the marriage, the only "reasoned starting point," *Bahr,* 107 Wis. 2d at 85, 318 N.W.2d at 398, is the total earnings of both parties.

I do not consider the *LaRocque/Bahr* starting point of "total earnings of both parties" to be merely a suggestion to trial courts. I believe the court deliber-

ately chose total earnings for several reasons. First, it wished to emphasize the partnership concept in long marriages in which both partners have contributed to the stream of income. Second, the court was aware that starting with the total earnings of both partners would minimize the likelihood of skewing the income available for maintenance.

The danger of selecting another starting point is apparent from this case. The trial court, without examination, allowed Robert to deduct business expenses from his income. Business expenses, particularly in an occupation such as Robert's, frequently afford the taxpayer a natural shelter for income because certain expenses such as housing, meals and transportation are tax deductible. Income may also be sheltered from taxation by artificial tax shelters. The business expenses which Robert deducted in this case may have replaced expenses which he would otherwise have incurred.

I believe the *LaRocque* court recognized that a fair result is more likely to be reached if the starting point is the total earnings of the parties. The *LaRocque* and *Bahr* courts recognized, however, as do I, that

> while this starting point is important, it is not the determinative factor which controls the ultimate award. For "[i]t is the equitableness of the result reached that must stand the test of fairness on review," and such a result requires a reasoned starting point *adjusted to reflect thoughtful consideration of other important factors. Bahr v. Bahr,* 107 Wis. 2d 72, [ ] 85, 318 N.W.2d 391[, 398] (1982) [quoting *Lacey v. Lacey,* 45 Wis. 2d 378, 382, 173 N.W.2d 142, 144 (1970)]."

*LaRocque,* 139 Wis. 2d at 39, 406 N.W.2d at 742 (emphasis added).

In this case, the "thoughtful consideration of other important factors" would have included the extent to which the allowance to the husband of his business expenses made additional income available for maintenance.

I dissent principally because I believe that *LaRocque* should be revisited and its holding clarified or reaffirmed. I also dissent, however, because I conclude that the trial court's treatment of child support in relation to its award of maintenance does not "reflect thoughtful consideration."

The trial court did not order either parent to pay child support. It stated, however, that, "The issue of child support was considered by the Court and was factored into the provision of maintenance formula."

The trial court determined that Robert's net monthly income of approximately $5,000 was the appropriate *LaRocque* starting point. It then deducted $1,500 a month for the support of the two children in his custody.

My greatest concern with this approach is that Robert is getting a permanent credit of $1,500 a month for child support, although he will have a child support obligation only for a very limited time. At the time of the divorce, one child was within eighteen days of being eighteen years of age and the other was sixteen years of age. The judgment made no provision for adjustment or reexamination of the maintenance award as each child reaches majority. The majority assumes that the trial court is required to re-examine the maintenance issue once the children reach majority. This is not the case. The judgment does not require such reexamination. Nor does sec. 767.32, Stats.

The majority acknowledges that, in order to obtain a change in the maintenance award, Susan will have to move the court for a modification under sec.

154

767.32, Stats. We should not compel her to initiate expensive and time-consuming litigation to correct what is a present trial court error. The majority responds that there is no present error and that the error, if any, will occur only when the children reach majority. I would agree with the majority if the judgment awarded maintenance only until the children reach majority. Because the judgment, however, makes an award of maintenance which extends beyond the children's majority, the error is a present error and correctable on appeal.

Finally, the trial court did not explain how it arrived at the figure of $1,500 per month as child support. The majority states: "Given the nature of their lifestyle, Robert's annual earnings, and balance of the statutory factors the court concluded that the actual cost of maintaining the two children in the manner consistent with the lifestyle prior to the divorce was $1,500." Majority opinion at 143.

In its written findings of fact and conclusions of law the trial court did not make any finding as to the parties' lifestyle or the cost of maintaining the children in a manner consistent with the parties' lifestyle. It gave no consideration to the child support percentage standard which the trial court must consider in determining child support under sec. 767.25(1j), Stats.

In its oral decision the trial court stated: "I observe that both parties have lived well beyond their means for many, many years and have not wisely handled their money ...." In describing how it employed the *LaRocque* methodology, the trial court stated that it deducted from Robert's income, his business expenses and income taxes, and, "I am subtracting from that figure what he is reasonably obliged to pay in the way of support of the two boys, which I have used at the rate of $1,500 a month ...."

I am left with a nagging question: Why is $1,500 per month what Robert is "reasonably obliged" to pay in the way of child support? *See Bahr,* 107 Wis. 2d at 82, 318 N.W.2d at 397 (failure of trial court to explain reason for $1,500 per month maintenance award left supreme court with a nagging question as to its appropriateness). The court's finding falls short of reasoned decisionmaking required by *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981), *quoted in Bahr,* 107 Wis. 2d at 77–78, 318 N.W.2d at 395.

Although it does not say so, the majority is obviously supplying reasons to support the $1,500 figure. This practice is decried by the supreme court. In *Termination of Parental Rights to T.R.M.,* 100 Wis. 2d 681, 688, 303 N.W.2d 581, 584 (1981), the court stated, "we have previously expressed a preference for remanding the matter to the trial court when confronted with inadequate findings in family law or domestic relation cases."

Further, there is nothing in the record to support the $1,500 figure. Robert filed a financial disclosure statement but it is impossible from that statement to determine the expenses attributable to the children.

I conclude that the maintenance award has produced a substantial disparity between the post-divorce incomes of the parties. Robert and the children are able to live according to a lifestyle at least equal to that enjoyed prior to the divorce while Susan is denied the same opportunity. I therefore dissent.