IN RE the MARRIAGE OF: Eileen BISONE, Petitioner-Appellant,

v.

Dennis BISONE, Respondent-Respondent.

Court of Appeals

*No. 91-0057. Submitted on briefs September 4, 1991.—Decided October 16, 1991.*

(Also reported in 477 N.W.2d 59.)

On behalf of the petitioner-appellant the cause was submitted on the briefs of *Marjorie Wendt-Feeley* of *Schwei, Stern & Gay, S.C.* of Brookfield.

On behalf of respondent-respondent the cause was submitted on the brief of *John A. Keck* of Milwaukee.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

ANDERSON, J. Eileen Bisone appeals from a divorce judgment and claims that the trial court abused its discretion in three instances: (1) in awarding maintenance, (2) in failing to award family support, and (3) in denying her contribution for her attorney's fees from Dennis Bisone. Because we conclude that the trial court did not abuse its discretion, we affirm the judgment.[1]

Eileen and Dennis, both age 47, were married in 1967. The marriage lasted for twenty-three years and they had six children. At the divorce filing, four children were minors and their ages ranged from three to seventeen. During the marriage Eileen stayed home with the children and Dennis worked for Johnson Controls.

---

[1]Eileen claims that the trial court abused its discretion in awarding maintenance and child support instead of family support. Eileen states in her brief that there was an abuse of discretion in failing to award family support for the same reasons that the trial court abused its discretion in determining the maintenance award. We do not address her second issue independently because all the arguments are addressed in the first issue.

117

In September 1990, the trial court awarded an absolute divorce to both parties; joint legal custody of the minor children, with primary physical placement with Eileen; an equal property division; child support based on the child support guidelines; and limited term maintenance payments. Other facts will be explained where relevant.

The first issue is whether the trial court abused its discretion in awarding maintenance. The trial court made the following findings: Dennis's gross monthly income was $3347. Eileen's gross monthly income was $265 which consisted of income from a self-employment cleaning business and monthly rent from one of their adult sons. Both parties are in good health and fully able to work. Eileen is pursuing a graphic arts degree with June 1993 as the expected graduation date. She plans to obtain full-time employment at a likely salary of $15,000 to $20,000. The trial court found that her plan to be a part-time student and do some part-time work, while raising four children, was reasonable under the circumstances.

The trial court awarded monthly maintenance payments of $850 to Eileen from Dennis until July 31, 1993. Maintenance remains open through December 1995 if her career plans are not realized. The trial court closed maintenance to Dennis.

■

The determination of the amount and duration of maintenance is entrusted to the sound discretion of the trial court, and we will uphold the award absent an abuse of discretion. *LaRocque v. LaRocque*, 139 Wis. 2d 23, 27, 406 N.W.2d 736, 737 (1987). An abuse of discretion occurs when the trial court has failed to consider the proper factors, has based the award upon a factual error, or when the award itself was, under the circumstances,

either excessive or inadequate. *DeLaMatter v. DeLa-Matter,* 151 Wis. 2d 576, 582–83, 445 N.W.2d 676, 679 (Ct. App. 1989).

Eileen claims that the trial court abused its discretion in determining the amount of maintenance for three reasons.[2] First, Eileen argues that the trial court failed to consider sec. 767.26(6), Stats., which requires a determination of whether and when the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage. Our reading of the trial court's oral decision indicates that the trial court implicitly considered subsec. (6). The trial court stated that Eileen testified that she could obtain full-time employment as a graphic artist in 1993 at $15,000 to $20,000. It calculated her after-tax monthly income based on $18,000 a year and concluded that she did not need maintenance beyond the time she would begin employment. The trial court left maintenance open if her plans were not realized.

Section 767.26, Stats., is designed to further two distinct but related objectives: to support the recipient spouse in accordance with the needs and earning capacities of the parties and to ensure a fair and equitable

---

[2] One additional reason Eileen claims that the trial court abused its discretion is that it did not consider Dennis's ability to continue maintenance payments. In making a maintenance determination, the court is required to consider only *relevant* factors in setting maintenance. *See Trattles v. Trattles,* 126 Wis. 2d 219, 228, 376 N.W.2d 379, 384 (Ct. App. 1985). There is nothing in the record to indicate that Dennis will not continue to work, or that he will be unable to continue to work. We conclude that because Dennis's ability to continue maintenance payments was not at issue, the trial court did not abuse its discretion in not addressing Dennis's ability to continue maintenance payments.

financial arrangement between the parties in each individual case. *LaRocque,* 139 Wis. 2d at 32–33, 406 N.W.2d at 740. At the same time, subsec. (6) speaks of "feasibility," thus recognizing that it is impossible to guarantee that the party seeking maintenance achieve a standard of living *definitely* comparable to that enjoyed during the marriage. Section 767.26 and its objectives realistically require that the party seeking maintenance have a standard of living *reasonably* comparable to that enjoyed during the marriage.[3]

The standard of living must be individualized for each case by considering the facts and circumstances of the marriage. *Hubert v. Hubert,* 159 Wis. 2d 803, 819, 465 N.W.2d 252, 258 (Ct. App. 1990). A maintenance award must be viewed in light of both the payor and the payee. *See Gerth v. Gerth,* 159 Wis. 2d 678, 683, 465 N.W.2d 507, 510 (Ct. App. 1990). A reasonably comparable standard of living must be accomplished without unreasonable hardship to the supporting party. *Bahr v. Bahr,* 107 Wis. 2d 72, 83, 318 N.W.2d 391, 397 (1982). One of the unfortunate realities of divorce for many parties is that their economic status cannot be maintained at precisely the same level as before the divorce. *See Hubert,* 159 Wis. 2d at 820-21, 465 N.W.2d at 259.

---

[3]Eileen implies that the trial court should have considered an equal division of total income as a starting point in determining maintenance, relying on *LaRocque v. LaRocque,* 139 Wis. 2d 23, 39, 406 N.W.2d 736, 742 (1987). However, the Wisconsin Supreme Court stated that an equal division is not the determinative factor which controls the ultimate award. *Id.* We conclude that the trial court thoughtfully considered other important factors of sec. 767.26, Stats. *See LaRocque,* 139 Wis. 2d at 39, 406 N.W.2d at 792.

■

The trial court recognized that this was such a case. The marital estate is relatively small and Dennis's income is modest. There is not enough income to assure that Eileen will have a standard of living definitely comparable to that during the marriage. However, the trial court did not abuse its discretion when it found that her future income will be *reasonably* comparable to her standard of living during the marriage. Eileen's projected income will not reduce her to a subsistence level while Dennis preserves the pre-divorce standard of living. *See LaRocque,* 139 Wis. 2d at 35, 406 N.W.2d at 741. The trial court recognized the limitations in this case and determined that Eileen could obtain a standard of living reasonably comparable to the one that she had during the marriage.

The trial court's consideration of the standard of living is further demonstrated by the option of the maintenance extension. Modification of limited term maintenance is not permanently foreclosed because limited term maintenance can be substituted with permanent maintenance. *Bentz v. Bentz,* 148 Wis. 2d 400, 407, 435 N.W.2d 293, 296 (Ct. App. 1988). Therefore, we conclude that the trial court did not abuse its discretion in its maintenance award and properly considered the support and fairness objectives of maintenance.[4]

The second reason Eileen claims that the trial court abused its discretion was in its use of a computer program. She argues that the trial court did not make a record of what consisted of the computer program and calculations or a record of the information used as input.

---

[4]Eileen also complains that the trial court did not take into account Dennis's testimony that he receives an annual raise. Eileen may move for a revision of the amount of maintenance at a later date. Section 767.32, Stats.

She concludes that "in all likelihood [the trial court] used evidence not before it to determine maintenance and support." She states that the trial court's failure to place the computer program input in the record leaves the parties with no rationally explained basis for its conclusions. We disagree.[5]

Eileen has not shown us, nor can we find, that the trial court used any facts not placed into evidence to determine maintenance and child support. The trial court may take judicial notice of tax tables and tax laws. *See* sec. 902.01, Stats. This information was inputted into the computer program. Eileen does not claim that the tax tables and tax laws were inputted incorrectly into the computer program. The other evidence that was inputted into the computer program were the incomes of Dennis and Eileen. These amounts were also in the record. In its oral decision, the trial court described the numbers used in reaching its conclusion.

The computer program did nothing more than make the necessary calculations, such as after-tax income and the effect of tax exemptions, faster and more accurate. The results of the computer program are entirely dependent on the inputted numbers. The computer results are not evidence outside of the record any more than results from a trial court's use of a calculator, pencil and paper,

---

[5]During trial, but just before closing arguments, the trial court stated that it would be using a computer program to calculate the tax implications of the maintenance and child support awards. Neither party objected. Generally, an appellate court will not review an issue raised for the first time on appeal. *Wirth v. Ehly,* 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1980). This is a rule of judicial administration, however, and does not affect our power to deal with an issue. *Id.* We address the issue because the resolution of it will aid the trial courts.

or a mental calculation. The trial court, in its reasoning process, used facts in the record and their reasonable inferences to reach a conclusion based on proper legal standards. *See Holbrook v. Holbrook,* 103 Wis. 2d 327, 339–40, 309 N.W.2d 343, 349 (Ct. App. 1981). The fact that the trial court used a computer program as an aid is not an abuse of discretion.[6]

The third reason Eileen claims that the trial court abused its discretion in determining the maintenance amount is because it erred in finding Dennis's budget was unreasonably low. Dennis submitted a budget of $410 per month. The trial court determined Dennis's budget was remarkably low in the long run because "he can't be reasonably expected to live with his parents indefinitely and to maintain that budget indefinitely." We conclude that the trial court's decision to reject Dennis's budget was the product of a rational mental process by which the testimony and law relied upon were stated and considered together to achieve a reasonable determination. *See Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981).

The final issue Eileen raises is whether the trial court abused its discretion in not requiring Dennis to contribute to her attorney's fees. Awarding attorney's fees is within the discretion of the trial court and will not

---

[6]As author of the majority opinion I join in the concurring opinion. Trial courts should be encouraged to make innovative use of the technology provided by the Circuit Court Automation Project to facilitate the decision-making process. Of course, computers and software, no matter how sophisticated, cannot replace the sound exercise of judicial discretion; but if properly used new technology can augment the prudent application of judicial discretion to the facts and law properly before the court.

be altered on appeal unless that discretion was abused. *Kastelic v. Kastelic,* 119 Wis. 2d 280, 290, 350 N.W.2d 714, 719 (Ct. App. 1984). Attorney's fees are to be awarded upon a showing of need, ability to pay, and the reasonableness of the fees. *Id.* The trial court considered each factor and we conclude that the findings are not clearly erroneous. Section 805.17(2), Stats.

Eileen argues, however, that the trial court erred in reasoning that she can use some of the proceeds from the sale of their house to pay her attorney's fees. The trial court made a fifty/fifty property division. Attorney's fees are interrelated with and interdependent on the property and maintenance awards. *Dixon v. Dixon,* 107 Wis. 2d 492, 509, 319 N.W.2d 846, 854 (1982). Thus, we conclude that it was not an abuse of discretion to consider her property settlement as a measure of her need.

*By the Court.*—Judgment affirmed.

NETTESHEIM, P.J. *(concurring).* I agree with the majority opinion in all respects. I write separately to more fully address Eileen's claim that the trial court's use of a computer program in determining the tax consequences of the maintenance and support awards constituted the use of facts not in evidence.

This case represents the first appellate statement concerning trial court use of a computer program in the decisional process. It is important therefore that the bench and bar understand both the reach and limits of this decision.

## FACTS AND PROCEDURE

I first recite in some detail the procedural history of this case which led to the trial court's use of its computer program.

The parties stipulated only to the joint custody of the parties' four minor children with primary physical placement to Eileen. All other issues—maintenance, child support, property division and attorney's fees—went to trial. During the trial, Eileen sought to introduce certain tax tables as factual evidence. The trial court rejected this information, concluding that it represented legal—not factual—material. The court indicated, however, that Eileen could use the tax tables in her final arguments as relevant legal/tax information.

As the majority opinion notes, after the close of the evidence but before counsel presented their final arguments, the trial court alerted counsel that it previously had inputted relevant tax law and codes into its computer and that the court would be considering such data on the maintenance and support questions. The court also told counsel that if they had made their own tax calculations, they were free to argue from such data. The court concluded by saying:

> [B]ut I want you both to be aware that that's how I'm going to proceed on tax treatment and disposable income in considering maintenance and child support.

As the majority correctly notes, neither Eileen nor Dennis objected to the court's stated intention to use its computer program.

The parties then made their final arguments. Eileen stated her calculations of the parties' respective net dis-

posable incomes using her own tax calculations.[1]

The trial court then rendered a thorough bench decision. In making its findings as to the parties' respective net disposable incomes, the court adopted its own calculations and expressly explained why it was rejecting Eileen's.

After the court had completed its bench decision, an ensuing discussion revealed that Dennis was paid twice a month, not biweekly as the evidence had led the court to believe. Since the court's computer computations were premised upon a biweekly payment schedule, the court briefly adjourned to input this new and corrected information into its computer. The court then reconvened and recited its modified findings and conclusions based upon this corrected information. In so doing, the court provided counsel with printouts of this latest computer calculation so that counsel could follow along with the court as it explained its modified findings and conclusions.

## ANALYSIS

Eileen contends that the trial court's use of its computer program constituted the impermissible use of facts not in evidence. This argument misperceives both the trial court's computer program and the court's use of the program. The court's computer program is built upon existing tax law. This material, as the trial court appropriately noted during the trial, is "law," not "fact." As the majority correctly holds, Eileen has failed to demonstrate that any of this legal/tax information inputted into the trial court's computer program was incorrect.

---

[1]Dennis did not address the tax consequences of the maintenance and support questions in his final argument.

Armed with this legal/tax information, the trial court's computer program is then readied to receive factual information concerning a given case and to produce resultant calculations. Here again, Eileen makes no claim that any factual determination concerning this case which the trial court inputted into its computer was incorrect or clearly erroneous. *See* sec. 805.17(2), Stats.

Thus, as the majority correctly concludes, the trial court's use of its computer program in this case produced nothing more or different than if the court had performed the same calculations by other more conventional, time-consuming or outmoded methods.

It is important to add, however, that our holding in this case should not be read to give *carte blanche* approval to a trial court's use of computer programs and the results generated thereby. This case stands only for the proposition that a trial court's use of a computer program is permitted where: (1) the inputted legal data is in accord with the law; (2) the inputted factual findings are not clearly erroneous; *and* (3) the parties have otherwise had sufficient and fair opportunity to challenge such inputted data.

While we must encourage trial court use of computer technology, we must also assure that litigants and the bar have fair opportunity to challenge the accuracy of the court's computer inputted data. We should bear in mind that a computer generated result is only as valid as the inputted data. In a different case, it may be that a trial court's inputted legal data may be incorrect or the inputted factual data may be clearly erroneous or outside the evidentiary record. We will deal with those problems as they arrive in this court. As the majority correctly holds, this case does not present those troubling issues.

The trial court's procedure in this case, however, offers some guidance on avoiding these potential

problems. Here the trial court notified counsel in advance of final argument that it intended to use its computer program to assist in its consideration of the tax consequences of its decision. I recommend such a procedure—perhaps at an even earlier stage in the proceedings—so that counsel will understand early on that they must be prepared to address not only the tax position of the adversary but also of the court.

I also recommend the procedure used here by the trial court of providing counsel with a copy of the computer printout of the calculations before the court makes its ultimate rulings. This procedure affords counsel yet another opportunity to challenge the trial court's underlying data.

My final observation about the trial court's procedure in this case is perhaps the most important. *Although the trial court ultimately adopted its own computer generated tax calculations, the court did not exhibit a closed mind to the alternative tax computations offered by Eileen.* Indeed, the court spoke directly to Eileen's calculations in its bench decision. Thus, the trial court considered not only its own computer results but also all arguments on the question.[2]

## CONCLUSION

The trial courts of this state are now fully computerized. Wisconsin's judicial education programs encourage and teach the use of computers, particularly in the area

---

[2]This procedure also avoids the prospect of reversal where a party's tax computations are supported by uncontradicted evidence. Before the court may reject such evidence, the court must explain why the evidence is improbable or the witness discredited. *Ashraf v. Ashraf,* 134 Wis. 2d 336, 346, 397 N.W.2d 128, 132 (Ct. App. 1986).

of family law. The trial court in this case is to be commended for its leadership role in this area. This case demonstrates that while the arrival of the computer brings new efficiency to litigation and decision making, it also creates the need for new or adjusted procedures.

With these additional remarks, I concur.