IN RE the MARRIAGE OF Charles M. OLSON, Petitioner-Appellant,

v.

Diane C. OLSON, a/k/a Wendorf, Respondent-Respondent.

Court of Appeals

*No. 93–2447. Oral argument June 2, 1994.—Decided June 29, 1994.*

(Also reported in 520 N.W.2d 284.)

289

On behalf of the petitioner-appellant, there were briefs and oral argument by *Russell W. Devitt* of *Soffa & Devitt* of Whitewater.

On behalf of the respondent-respondent, there was a brief and oral argument by *Terry P. Race* of *Olm & Race* of Whitewater.

Before Brown, Nettesheim, and Snyder, JJ.

BROWN, J.   The issue is whether the trial court misused its discretion when upon remand it justified its maintenance award by reasoning that maintenance based on equalization of income is "self-evidently fair." We hold, consistent with *LaRocque v. LaRocque*, 139 Wis. 2d 23, 406 N.W.2d 736 (1987), that a fifty/fifty division is not self-evidently fair; therefore, the trial court's mechanistic approach was a misuse of discretion because the trial court did not properly consider the fairness objective of maintenance determinations. Thus, we reverse the trial court order and remand with directions.

This case is before us for the second time. The first time, Charles M. Olson appealed the maintenance award to Diane C. Olson, now known as Diane Wendorf, in their divorce judgment.[1] *Olson v. Olson*, No. 92-1013, unpublished slip op. at 1 (Wis. Ct. App. Mar. 17, 1993) (*Olson I*). In *Olson I*, we stated:

> [T]he family court's decision is devoid of any consideration of the effect of the maintenance award on

---

[1] Charles also appealed the trial court's child support award and the trial court's allocation of one child to each party for income tax dependent purposes to preserve the questions as they related to any maintenance rulings. *Olson v. Olson*, No. 92-1013, unpublished slip op. at 5 (Wis. Ct. App. Mar. 17, 1993).

Charles' economic situation. This is especially troubling since the court's award appears to leave Charles in a markedly more distressed financial position than Diane.

. . ..

As far as it went, the family court's decision as to why an equalized income *approach* to maintenance was the proper starting point is well reasoned. However, the [family] court did not further address whether the result produced by this premise was fair to Charles. We reverse the maintenance award and remand for this exercise.

*Id.* at 4-5. We also stated that the trial court was free to take further evidence if needed.

During the remand proceedings, the trial court interpreted our decision solely as a remand for clarification of its previous decision. The trial court reiterated and clarified its findings of fact and its determinations related to the remand issues.[2] The trial court found Charles' salaried and self-employment income to total $42,569[3] after subtracting social security taxes. It found Diane's income as $6886 after subtracting social security taxes. It further found that, beginning in 1996, Diane's probable yearly income would be $22,000. After equalizing the income, the trial court awarded $17,841 maintenance until August 6, 1996 and $11,126 per year thereafter. The trial court then calculated child support paid by Charles as $7162 based on 25% of $28,649, an equalized income of $24,727 plus social security tax added back in. Thus,

---

[2] We also authorized the trial court to readdress the child support and income tax dependent issues in light of any further ruling as to maintenance. Because the trial court adopted its prior ruling, it did not address these other issues.

[3] For simplicity, amounts are rounded off to the dollar.

Charles was left with an income of $17,565 (before income taxes but after social security taxes) and Diane was left with an income of $18,545 (before income taxes but after social security taxes).

The trial court acknowledged that it was not leaving Charles with enough money to meet his monthly budget of $1590, but explained that its decision was fair because equalization of the parties' incomes was "self-evidently fair."

Another remand proceeding was held on Diane's motion asking the trial court to clarify the tax consequences of its decision. The trial court, using a computer program, estimated that Charles would have an after-taxes monthly income of $1109 and Diane would have an after-taxes monthly income of $1234. However, the trial court noted that these figures do not take into account Charles' higher social security tax on his self-employment income. The trial court justified the disposable income disparity by stating that "[Charles'] much greater FICA contribution entitles him to greater social security benefits when he retires."

"The determination of the amount and duration of maintenance is entrusted to the sound discretion of the circuit court, and this court will not disturb the determination of the circuit court unless the circuit court [misuses] its discretion." *LaRocque,* 139 Wis. 2d at 27, 406 N.W.2d at 737. The exercise of discretion, however, "must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Id.* (quoted sources omitted).

The touchstone of analysis in reviewing a maintenance award is the list of statutory factors enumerated

in § 767.26, STATS. *LaRocque*, 139 Wis. 2d at 31-32, 406 N.W.2d at 739-40. The § 767.26 factors are designed to further two objectives: support and fairness. *LaRocque*, 139 Wis. 2d at 33, 406 N.W.2d at 740. The former ensures that the payee spouse is supported in accordance with the needs and earning capacities of the parties; the latter ensures a fair and equitable arrangement between the parties in each individual case. *Id.*

Our primary focus here, as it was in *Olson I*, is on the fairness factor. Charles argues that the trial court misused its discretion during the remand proceeding because it applied a fifty/fifty division of income "without regard to the needs of the paying party or the facts and circumstances of any individual case." We agree and hold that the trial court misused its discretion when it presumed that equalizing incomes is "self-evidently fair" to both parties.

Under *LaRocque* and its progeny, it is appropriate in a marriage of many years to consider an equal division of total income as a starting point in determining maintenance. *LaRocque*, 139 Wis. 2d at 39, 406 N.W.2d at 742. However, an equal division is not the determinative factor which controls the ultimate award. *Bisone v. Bisone*, 165 Wis. 2d 114, 120 n.3, 477 N.W.2d 59, 61 (Ct. App. 1991). Rather, the § 767.26, STATS., factors and the related support and fairness objectives determine the ultimate award and "require that the party seeking maintenance have a standard of living *reasonably* comparable to that enjoyed during the marriage." *Id.* at 119-20, 477 N.W.2d at 60-61. Moreover, "[a] reasonably comparable standard of living must be accomplished without unreasonable hardship to the supporting party." *Id.* at 120, 477 N.W.2d at 61.

We stated in *Kennedy v. Kennedy*, 145 Wis. 2d 219, 223, 426 N.W.2d 85, 87 (Ct. App. 1988), that the family court "[does] not discharge its decisionmaking responsibility with respect to maintenance simply by equalizing or attempting to equalize the post-divorce income between the parties. That mechanistic approach does not satisfy either goal of maintenance."

Here, the trial court concluded that Diane would have about $125 per month more disposable income for her personal needs than Charles would have for his. The trial court dismissed the $125 amount as de minimis and stated that it was fair that Charles and Diane have the same amount of disposable income. However, the trial court failed to explain why, given their needs, the result was a "fair and equitable financial arrangement between the parties . . .." *LaRocque*, 139 Wis. 2d at 33, 406 N.W.2d at 740.

The record shows that Charles was left with disposable income insufficient to meet his expenses. The record does not show what portion of Diane's submitted expenses were her personal expenses and not the children's. Regarding Diane's expenses, the trial court stated, "[W]hen she has the children living in a house . . . there's some sharing of . . . expenses. If the children were living apart from her and she were paying support, she couldn't do it as cheaply . . .." Despite this apparent acknowledgment that Diane's *personal* expenses could be less than Charles' *personal* expenses, the trial court concluded that "it is totally fair then to Charles" for him to have the same amount of disposable personal income as Diane.

■

We asked in *Olson I*—why is it fair under the facts and circumstances that Charles should not be able to meet his basic needs? Once again, we remand to the

trial court to answer whether a fifty/fifty division is fair under the circumstances of this case. What troubles us is that nowhere in the record does the trial court go beyond saying fifty/fifty is "self-evidently fair." Under *LaRocque* and *Kennedy*, equalization is only a mathematical starting point and not "self-evidently fair."

If, after considering the evidence, the trial court determines that equalization of income as a stopping point does not produce a fair result, we ask the trial court to make a determination that would be fair and equitable between the parties. The trial court may need to take further evidence about the parties' needs.

We do not mandate another mathematical formula or a bright-line rule. A proper exercise of discretion involves a reasoned approach, not a mechanistic one. *LaRocque*, 139 Wis. 2d at 27, 406 N.W.2d at 737. Nor do we dictate a particular result. We cannot exercise the discretion that is properly the trial court's. *See id.* at 43, 406 N.W.2d at 744.

■

Charles also argues that the trial court misused its discretion when it set permanent, rather than limited, maintenance. Charles contends that the trial court did not consider what Diane's needs would be in 1996 when only one of the children would be a minor. We hold that this concern would be more properly addressed at that time in a motion to modify the judgment under § 767.32, STATS. The trial court awarded permanent maintenance at $11,126 starting August 6, 1996 after considering its finding that Diane would be able to earn $22,000 per year starting in 1996. We agree with Charles that the trial court did not also consider what Diane's needs might be at that time. However, it was within the trial court's discretion to base its decision on the facts before it, rather than speculate about Diane's

needs in 1996 or thereafter. *See Enders v. Enders*, 147 Wis. 2d 138, 146, 432 N.W.2d 638, 641 (Ct. App. 1988). We think it the better policy to decide when the facts are in the present, thereby avoiding unnecessary speculation.

Charles also argues that the trial court misused its discretion when it used a computer program during the remand proceeding to show the tax consequences of its earlier decision. Charles contends that the use of the program constituted the taking of evidence which the trial court prohibited the parties from presenting. Although we disagree with Charles' reasoning, we hold that the trial court's use of the program in this instance was a misuse of discretion.

Under § 767.26(7), STATS., the trial court is required to consider the tax consequences to each party. A trial court's use of a computer program to figure tax consequences is permitted where: "(1) the inputted legal data is in accord with the law; (2) the inputted factual findings are not clearly erroneous; *and* (3) the parties have otherwise had sufficient and fair opportunity to challenge such inputted data." *Bisone*, 165 Wis. 2d at 127, 477 N.W.2d at 64 (Nettesheim, P.J., concurring).

██

Here, the trial court arrived at a conclusion about the tax consequences without inputting the pertinent factual finding that Charles pays more social security taxes than Diane.[4] Furthermore, any consideration of

---

[4] Charles also contends that the circuit court also did not input information about itemized deductions for real estate taxes or mortgage interest. Because Charles does not provide us with a record cite for this contention and our search did not show that this information was part of the appellate record, we therefore do not consider this contention.

tax consequences to the parties started from the presumption that equalizing income is "self-evidently fair." The trial court stated that the tax consequences to both parties would be "roughly the same" because they would have the same income. Curiously, the trial court also queried, "I don't know how the appellate court can ask me to [figure Charles' taxes] based upon the prior expert testimony that was involved." However, we expressly authorized the trial court to take further evidence and it could have done so. Because the trial court refused to take further evidence that it apparently thought it needed, the parties were foreclosed from presenting evidence which could rebut the trial court's "roughly the same" presumption. We conclude that the inputted factual findings were clearly erroneous because of their incompleteness and therefore the trial court's use of the computer program was a misuse of discretion.

We remand to the trial court to consider the fairness and support objectives as they relate to *both* parties. The trial court should also consider the tax consequences of potential awards, including deductions and social security taxes. Finally, the trial court may revisit its child support award if necessary.

*By the Court.*—Order reversed and cause remanded with directions.

SNYDER, J. (*concurring*). We again reverse and remand because the trial court failed to sufficiently explain why the maintenance ordered is fair to the noncustodial spouse. While our remand invites the trial court to "revisit its child support award if necessary," I suggest that the failure of the trial court to properly apply the Department of Health and Social

Services' standards[1] in ordering child support is a maintenance-related methodology problem that must also be corrected, and if corrected might assist the trial court in finally putting to rest this somewhat pesky and recurring maintenance issue.

The trial court's methodology disposes of maintenance before ordering child support. When child support is later ordered, it is computed by applying the two children 25% standard to the noncustodial parent's income after deducting maintenance. WIS. ADM. CODE § HSS 80.03(1)(B). However, this court has previously said that "[w]hen child support is determined solely by using the standards, maintenance payable to a spouse does not enter the computation." *Erath v. Erath*, 141 Wis. 2d 948, 955, 417 N.W.2d 407, 410 (Ct. App. 1987). Here, it clearly did.

The use of child support percentage standards are presumptively mandatory. Here, that means that the trial court must order Charles to pay 25% of his gross income of $42,569 ($10,642) or explain why he did not. Because maintenance may not be entered into a child support computation and because no other explanation is offered as to why § HSS 80.03 was not explicitly followed, the child support order represents an end-around the established child support mandates. Whether the children's needs might still be met by first awarding maintenance and then computing child support after deducting maintenance from the noncustodial spouse's gross income is irrelevant.

Because this trial record does not reconcile the child support order of 16.8% of Charles' gross income ($7162) with the legal mandates of WIS. ADM. CODE CH.

---

[1] WISCONSIN ADM. CODE CH. HSS 80, "Child Support Percentage of Income Standard."

HSS 80 and the *Erath* language, I am obliged to express this additional concern.