Antoinette J. TOURTILLOTT, as an individual and as a Special Administrator of the Estate of Scott Kevin Tourtillott, Plaintiffs-Appellants,†

v.

ORMSON CORPORATION, a Wisconsin corporation, Defendant-Respondent.

Court of Appeals

*No. 94–0647. Submitted on briefs December 1, 1994.—Decided December 20, 1994.*

(Also reported in 526 N.W.2d 515.)

†Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Scott B. Taylor* of *Lucas & Wilkoski* of West Allis.

For the defendant-respondent the cause was submitted on the briefs of *Scott A. Farrow* and *Brent P. Benrud* of *von Briesen & Purtell, S.C.* of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

WEDEMEYER, P.J.   Antoinette J. Tourtillott appeals from a judgment, following a bench trial, dismissing her complaint against her deceased husband's employer, Ormson Corporation. Tourtillott alleged that Ormson was negligent in failing to include the deceased in a list of employees for life insurance coverage provided to its life insurance carrier. Tourtillott raises two issues on appeal: (1) whether this court should apply the clearly erroneous or the *de novo* standard of review if the judge who presided over the trial died prior to rendering a decision and the parties stipulated to having a new trial judge render a decision by reviewing the record rather than retrying the case; and

(2) whether the trial court erred in concluding that Ormson was not negligent.

Because a record review by the trial court in these circumstances is analogous to a traditional bench trial, and because an appellate court cannot make findings of fact, the correct standard of review is whether the trial court's findings are clearly erroneous. In this case, because the trial court's findings are not clearly erroneous, and because the trial court's conclusion that Ormson was not negligent is supported by the facts, we affirm the judgment.

## I. BACKGROUND

This case arises out of a life insurance policy dispute following the death of Scott Kevin Tourtillott, Antoinette's husband. Scott worked for Ormson for several years prior to his death in August 1988. Following Scott's death, Antoinette requested that Ormson forward to her the proceeds from Scott's group life insurance policy. Ormson denied the claim, explaining that although the corporation offered a $10,000 life insurance policy at no charge to its employees, Scott had never provided a completed application for such insurance. Therefore, no life insurance policy covering Scott was ever issued.

Antoinette filed suit and the case was tried to the court, the Honorable Joseph P. Callan, in November 1992. During trial, Tourtillott and her sister testified that prior to his death, Scott made statements to the effect that he believed he had a life insurance policy through Ormson. Employees of Ormson testified that they had repeatedly asked Scott to complete the life insurance policy application, but that Scott refused, explaining that he had adequate life insurance coverage through his wife's employer. Ormson's insurance

agent testified that Scott's name was not included on a list of employees it received from Ormson.

Prior to issuing a decision, Judge Callan died. The case was reassigned to the Honorable Patrick J. Madden. Both parties waived their right to a re-trial, instead stipulating that Judge Madden would decide the case based solely on a review of the record. Judge Madden issued findings of fact and conclusions of law in favor of Ormson and entered judgment dismissing Tourtillott's claim. Tourtillott now appeals.

## II. DISCUSSION

### A. Standard of Review.

Tourtillott argues that because of the circumstances in this case, this court owes no deference to the trial court's findings. Tourtillott claims that because the findings were rendered upon a record review, this court is just as capable of determining the facts as was the trier of fact. Tourtillott asserts that, as a result, we should employ a *de novo* review rather than the usual clearly erroneous standard in examining the trial court's findings of fact. We reject this argument.

This court is precluded from making findings of fact where the facts are in dispute. *See Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155, 159 n.3 (1980). Moreover, "[i]n all actions tried upon the facts without a jury, . . . [the trial court's] [f]indings of facts shall not be set aside unless clearly erroneous." Section 805.17(2), STATS. Even though this case is procedurally distinct from the usual bench trial, it is undisputed that both parties stipulated that Judge Madden would decide the case based on a review of the transcripts. Judge Madden's review and rendering

findings of fact necessarily involved determining credibility and weight to be afforded each witness's testimony, and resolving the factual disputes. Therefore, we conclude that Judge Madden's review of the record under the facts and circumstances of this case is analogous to a traditional bench trial. Accordingly, appellate review of the trial court's findings of fact is subject to the clearly erroneous standard. We will, however, review the trial court's conclusion of law *de novo*. *See First Nat'l Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

## B. *Analysis.*

Tourtillott argues that the record contains ample evidence to conclude Ormson was negligent, and, therefore, the trial court's conclusion that Ormson was not negligent is erroneous. Tourtillott argues that Ormson was negligent for failing to include Scott's name among the list of employees that was submitted to the insurance company. Ormson's defense was that Scott's name was not submitted because he never returned a completed application form and, in fact, he explicitly declined to accept the insurance.

The trial court made findings of fact: (1) that Ormson had provided Scott with the necessary forms to apply for life insurance coverage under their group policy; (2) that Ormson employees had reminded Scott on at least one occasion to complete and return the application form; and (3) that Scott, for some reason, failed to return the application form. The trial court concluded that Tourtillott failed to satisfy her burden of proving that Ormson was negligent. Although Tourtillott's argument focuses primarily on the trial court's conclusion, we first address whether the trial court's findings of fact are clearly erroneous.

The record contains sufficient credible evidence to support the trial court's findings of fact. Ron Hackbarth, the service manager for Ormson, testified with specificity about his conversations with Scott regarding life insurance. Hackbarth testified that he provided the appropriate forms to Scott and when he questioned Scott about returning the forms, Scott "referred to his wife as having adequate insurance, that she would be carrying him under her policies, and that he wouldn't be taking our insurance that we offered him." Hackbarth further testified that he told Scott "if he . . . was denying the health insurance because Toni, his wife, was carrying him on her policies, there was no charge for the life insurance. The life insurance still could be taken. And, again, he [Scott] said his wife had adequate coverage, that he wasn't interested."

Tourtillott claims that Hackbarth's testimony is less credible than the testimony offered by herself and her sister because, as a long-time Ormson employee, Hackbarth has an interest in the outcome. Tourtillott testified that Scott said he had life insurance through Ormson during a conversation with her sister, Kimberly Vele, in March 1987. Vele, who is an attorney, testified that while meeting with the Tourtillotts to prepare their wills, Scott said he thought he had life insurance through Ormson. Tourtillott argues that this testimony proves Scott believed he had a life insurance policy through Ormson and that Scott believed he had taken all the necessary steps to secure coverage.

Although this testimony conflicts with Hackbarth's testimony, the stipulation among the parties to have Judge Madden reach a decision left the resolution of any inconsistencies to Judge Madden. *See Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 250, 274

N.W.2d 647, 650 (1979) (trial court serves as ultimate arbiter of credibility of witnesses).

Because there is sufficient credible evidence in the record to support the trial court's findings, the findings are not clearly erroneous and we must defer to those findings. The finding that Ormson provided Scott with the necessary information to apply for the insurance, and the finding that Scott failed to submit an application, both support the conclusion that Ormson was not negligent. Ormson's duty to ensure that coverage was in effect did not arise until Scott would have submitted his application.[1] Therefore, we conclude that the legal conclusion reached by the trial court that Ormson was not negligent, is correct.

*By the Court.*—Judgment affirmed.

---

[1] We are mindful that additional duties may arise in a situation where an employment contract promises to provide group life insurance as a part of the compensation package without submission of an insurance application. This case, however, does not raise or involve such an issue.