In re the Marriage of: Judith A. Ladwig,
Petitioner-Respondent-Cross-Appellant,

v.

Daniel A. Ladwig,
Respondent-Appellant-Cross-Respondent.

Court of Appeals

*No. 2009AP1202. Submitted on briefs January 27, 2010.
—Decided May 19, 2010.*

2010 WI App 78

(Also reported in 785 N.W.2d 664.)

497

498

On behalf of the respondent-appellant-cross-respondent, the cause was submitted on the briefs of *Linda Roberson* and *Holly J. Slota* of *Balisle & Roberson, S.C.*, Madison.

On behalf of the petitioner-respondent-cross-appellant, the cause was submitted on the briefs of *Margaret W. Hickey* of *Becker & Hickey, S.C.*, Milwaukee.

Before Brown, C.J., Neubauer, P.J., and Anderson, J.

¶ 1. NEUBAUER, P.J. This appeal after remand stems from the 2006 divorce of Daniel Ladwig and Judith Ladwig. Following an appeal from the original judgment of divorce and postjudgment order, this court reversed the trial court's maintenance and child support determinations and remanded for further proceedings.[1] Based on a stipulation by the parties, the remand court did not conduct a trial on the remanded issues, but rather exercised its discretion based on the existing record. Daniel now appeals from the trial court order on remand, which increased both his maintenance and child support obligations. Daniel challenges the remand court's order, arguing that the awards are excessive and that the remand court erred in making credibility determinations independent of the original trial court. We reject Daniel's arguments. We conclude that when the parties stipulate that a remand court conducting further proceedings may base its decision on the existing record, that court's exercise of discretion may be wholly independent of the original court, including

---

[1] *Ladwig v. Ladwig*, Nos. 2006AP2237, 2006AP2726, unpublished slip op. (WI App Nov. 14, 2007) (per curiam).

determining credibility and the weight given to evidence in the written record. We further conclude that the remand court properly exercised its discretion in determining both maintenance and child support.

¶ 2. Judith cross-appeals from the remand court's order, arguing that the remand court erred by reducing the child support owed to the two marital children by $65,000 for amounts Daniel allegedly provided to Judith's daughter from a prior marriage. We conclude that the remand court exceeded its authority when it reduced Daniel's statutory child support obligation to the parties' marital children in order to compensate for amounts paid during the marriage to Daniel's stepdaughter—Judith's daughter from a prior marriage. While the remand court clearly determined that fairness required this offset, it must be accounted for in either the maintenance award or property division. We therefore reverse the remand court's order as to this issue and remand with directions to amend the judgment consistent with this opinion. Finally, we remand certain tax issues for further consideration.

## BACKGROUND[2]

¶ 3. Daniel and Judith were married thirteen years. At the time of divorce, Daniel was a forty-six-year-old doctor whose annual income averaged $900,000. This was the second marriage for Daniel and, at the time of divorce, he paid about $39,732 annually in base child support for the two children of his first marriage. Judith, also age forty-six at the time of divorce, has a high school education and was employed

---

[2] In setting forth the facts existing prior to the original appeal, we have borrowed heavily from our unpublished decision. *See Ladwig* slip. op. ¶¶ 2–4.

as a medical secretary prior to her marriage to Daniel. During the marriage she did not work outside the home and devoted time to raising the parties' two children, ages thirteen and eleven at the time of trial. Judith was then employed as an account manager for $10.50 per hour and earned about $21,840 annually.

¶ 4. The original judgment, entered following a two-day trial, made a nearly equal division of property awarding Judith assets worth $1,500,000 and Daniel assets worth $1,417,385. Daniel was required to pay Judith maintenance for three years, $3000 per month for eighteen months and then $1500 per month for the remaining eighteen months. The parties shared legal custody and physical placement of their two children. The trial court determined that application of the child support percentage guideline was unfair to Daniel and set child support at $4000 a month with annual increases of $250 per month in 2008, 2009 and 2010. Judith appealed from the original judgment, challenging the trial court's determination as to both child support and maintenance.

¶ 5. In *Ladwig v. Ladwig*, unpublished slip. op. ¶ 1, Nos. 2006AP2237; 2006AP2726 (WI App Nov. 14, 2007) (per curiam), we reversed the trial court's determinations as to both child support and maintenance and remanded. We concluded that the maintenance award did not meet the support and fairness objectives of maintenance. *Id.*, ¶ 15. Specifically, the trial court erred in assessing Judith's noneconomic contributions to the marriage and in evaluating the standard of living Judith is entitled to postdivorce. As to Judith's postdivorce standard of living, we noted the trial court's statement that, with her property division award, Judith would have " 'assets far beyond what most high school graduates with office occupations expect to be able to have on

504

their own.' " *Id.*, ¶ 10. We observed that the benchmark in addressing standard of living is not whether "Judith would have a better lifestyle than the average high school graduate or live at an upper middle class standard." *Id.*, ¶ 10.

¶ 6. In evaluating the parties' proposed postdivorce budgets, the trial court also "ignored evidence that during the marriage the parties made cash investments and savings," and made no allowance for a comparable amount of investment or savings postdivorce. *Id.*, ¶ 9. This court noted the trial court's finding that, once the children are grown and the house has lost its importance, the equity in that homestead would be available to support Judith at a reasonable standard of living. *Ladwig*, slip op. ¶ 11. We observed that viewing Judith's substantial property division award as a means of supplementing her "budgetary needs" is contrary to Wisconsin law, which prohibits a maintenance award that forces one spouse to invade the property division to live while the other does not. *Id.* (citing *Dowd v. Dowd*, 167 Wis. 2d 409, 417, 481 N.W.2d 504 (Ct. App. 1992)). Finally, the trial court adopted a budget for Judith that included her share of expenses for the children but then awarded maintenance for only three years such that the children would still be minors when it ended. *Ladwig*, slip op. ¶ 13.

¶ 7. With respect to child support, we noted that in setting child support, the trial court failed to discuss the statutory factors relevant to a child support determination which deviates from the percentage standards. *See* Wis. Stat. § 767.511 (2007–08).[3] Further, the trial court "failed to place the burden on Daniel to show

---

[3] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

that application of the percentage standard was unfair to him by the greater weight of the credible evidence." *See Ladwig*, slip. op. ¶ 17.

¶ 8. On remand, the matter was scheduled for a three-day retrial due to the assignment of a new judge to family court. However, at a status conference on October 20, 2008, the parties agreed that no additional evidence was necessary to address the questions on remand, and the matter proceeded on briefs and the written record. The remand court issued its written decision on March 6, 2009. The remand court's decision includes detailed consideration of case law, as well as the child support and maintenance factors under WIS. STAT. § 767.511(1m) and WIS. STAT. § 767.56, respectively.

¶ 9. As to child support, the remand court found that no deviation from the percentage standard was warranted, determined Daniel's child support obligation to be $8455 per month, and ordered arrearages in keeping with its decision. However, the court also ordered that "the $65,000 spent by Dr. Ladwig on the support of [his stepdaughter] shall be a credit against any arrearage owed for child support." In addressing maintenance, the remand court found that "the maintenance payment needed to place [Judith] at predivorce standard" is $4700 per month for a period of fifteen years from the date of divorce, or in other words, until both Daniel and Judith are at retirement age.[4] Daniel appeals the awards as excessive; Judith cross-appeals

---

[4] The court also provided Daniel with a $41,000 credit toward his maintenance arrearage. In the original judgment of divorce, Judith had been awarded $41,000 more than Daniel in the parties' property division as a sort of advance maintenance payment. Judith does not appeal this portion of the remand court's judgment.

from that portion of the order granting Daniel a $65,000 credit toward child support arrearages. Both parties raise issues relating to tax considerations.

## DISCUSSION

*The Effect of the Stipulation on Remand*

■

¶ 10. At the outset, we address Daniel's contention that the remand court was not permitted to substitute its credibility determinations for those of the trial court without observing the witnesses or taking any evidence. In the parties' first appeal, this court concluded that the original trial court "erroneously exercised its discretion with respect to the maintenance and child support provisions." *Ladwig*, slip op. ¶ 1. However, by the time of remand, a different judge had assumed the family court rotation, and the Ladwig matter was scheduled for retrial. Three days prior to a retrial on the issues remanded, the parties stipulated that "no additional evidence was necessary to address the questions on remand."

¶ 11. Daniel points to authority holding generally that a successor judge may not make findings of fact and credibility determinations based on testimony heard by a predecessor judge. *See Cram v. Bach*, 1 Wis. 2d 378, 383, 83 N.W.2d 877 (1957). However, here the parties agreed that the successor judge would decide the remand for further proceedings based on the existing record. When the parties so stipulate, the successor court may properly review the record and render findings of fact, including determining credibility and the weight to be afforded to each witness's testimony in resolving factual disputes. *Tourtillott v. Ormson Corp.*, 190 Wis. 2d 291, 294–95, 526 N.W.2d 515 (Ct. App.

1994); *see also* 46 Am. Jur. 2d Judges § 32 (2010) ("The parties to an action may agree or stipulate that the action may be decided by a successor judge upon his or her reading and consideration of the record of evidence taken upon trial of the cause before the predecessor," and noting K. Kemper, Annotation, *Power of Successor or Substituted Judge, In Civil Case, to Render Decision or Enter Judgment on Testimony Heard by Predecessor,* 84 A.L.R. 5th 399 (2000)).[5]

¶ 12. Here, the directions on remand necessitated a reevaluation of the evidence and findings of fact. Based on the trial court's errors which encompassed both findings of fact and the proper standard of law, it stands to reason that the original court's factual findings and conclusions of law relating to maintenance and child support could potentially come into play on remand.[6]

---

[5] We recognize that *Tourtillott v. Ormson Corp.*, 190 Wis. 2d 291, 294, 526 N.W.2d 515 (Ct. App. 1994), involved a successor judge assigned in the original trial court proceedings. However, we see no difference in the analysis as it applies to a stipulation involving a remand to a successor judge. *See, e.g., In re Marriage of Crosetto*, 1 P.3d 1180, 1184 (Wash. Ct. App. 2000) (parties can consent on remand to having a successor judge decide a case based on the original record).

[6] While set forth in detail in the background section of this opinion, we reiterate this court's determination that the trial court "did not adhere to the charge that the recipient spouse is entitled to maintenance to support the predivorce standard of living," "ignored evidence that during the marriage the parties made cash investments and savings," and alluded to Judith's property division award and equity in the home, and relied on those assets in concluding that Judith could support her budgetary needs. *Ladwig*, slip op. ¶¶ 9–11, 13; *see* WIS. STAT. § 767.56; *Hubert v. Hubert*, 159 Wis. 2d 803, 819, 465 N.W.2d 252 (Ct. App. 1990). In setting child support, the trial court

¶ 13. The parties readily agree that they stipulated to have the remand court decide the case on the written record. While we acknowledge that the stipulation deprives the remand court of a first-hand opportunity to observe the demeanor of the witnesses, this is the manner of review agreed upon by the parties.[7] Therefore, the remand court properly decided the remanded issues based on its independent review of the existing record and rendered findings of fact, including credibility determinations and the weight to be afforded to each witness's testimony, in resolving factual disputes. *See Tourtillott*, 190 Wis. 2d at 294–95.

¶ 14. Of particular import to our review, and the target of Daniel's strenuous objection, is the remand court's reevaluation of Judith's budget. At trial, Judith submitted a monthly budget of $17,599 and Daniel submitted a monthly budget for himself of $15,000. In addition to his own budget, Daniel also submitted a monthly budget projection for Judith in the amount of $5920. Daniel based this projection on an analysis of income and expenditures from 1994 to 2004. The original trial court found Daniel's budget for Judith to be

failed to discuss the statutory factors relevant to a child support determination which deviated from the percentage standards and failed to place the burden on Daniel to establish unfairness.

[7] Daniel states without citation to the record that

[t]he parties stipulated to preserve [the original trial court's] role as trier or [sic] fact when they agreed to proceed on the existing record on remand. In consequence, [the trial court's] role on remand was akin to that of a reviewing court in that as [sic] he was precluded from making new or different credibility determinations.

However, the only characterization on appeal of the parties' stipulation is that included in the remand court's decision which clearly contemplated that it would be reevaluating the evidence presented to the original trial court.

"quantitative and credible," and based its maintenance award on Daniel's analysis which suggested that household monthly spending was approximately "$6,000 to $7,000." The remand court reviewed the record and determined that Daniel's budget for Judith left out cash payments despite credible testimony from both parties that cash was a predominant form of payment by the family.[8] The remand court then reviewed each party's submitted budget and found that both parties had "inflated" their budgets by including expenses for the children. After extracting all child-related expenses from Judith's budget, considering cash expenditures as part of the marital budget, and adding in an agreed-upon $1000 for savings and investments, the remand court arrived at $13,584 in monthly expenses to maintain the marital standard of living. It was within this framework that the remand court arrived at the maintenance and child support determinations.[9]

---

[8] While the parties continue to dispute on appeal the role that cash purchases played during the marriage, we have reviewed the trial court record and find credible evidence to support the remand court's findings. Daniel testified that his budget did not include money spent on mortgage payments, cash purchases of second and third homes, significant savings and stock purchases, and major home improvements. We therefore reject Daniel's contention that the remand court erred in its determination. *See* Wis. Stat. § 805.17(2).

[9] Also of note, the remand court accepted, for purposes of maintenance, that the parties' standard of living was premised on $300,000 per year. The record shows that Daniel misrepresented his true earnings to Judith, going so far as to forge her signature on their joint tax returns for a five-year period. Daniel provided Judith only with information regarding income and deposits under $300,000. The remand court's child support award was based on Daniel's actual income of $900,000. The

## 1. Appeal

### Standard of Review

¶ 15. The standard of review and controlling law as to maintenance and child support was set forth in the parties' prior appeal. Maintenance and child support determinations are entrusted to the circuit court and are not disturbed on review unless there has been an erroneous exercise of discretion. *LeMere v. LeMere*, 2003 WI 67, ¶ 13, 262 Wis. 2d 426, 663 N.W.2d 789. We will uphold the circuit court's discretionary decision if the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.* (citation omitted). We will accept a trial court's findings of fact unless clearly erroneous. WIS. STAT. § 805.17(2).

¶ 16. We acknowledge that this case arrives to this court upon a record review and, therefore, we are arguably in the same position as the remand court when it comes to reviewing the record. However, this court has previously addressed our standard of review when the parties stipulate to a trial court determination based solely on a review of the record. *Tourtillott*, 190 Wis. 2d at 294–95. In rejecting the appellant's contention that the court of appeals should conduct a de novo review, the *Tourtillott* court observed that the parties' stipulation necessitated the rendering of findings of fact which in turn involved determining credibility and the weight to be afforded the testimony. *Id.* The *Tourtillott* court observed that the court of appeals

maintenance award, coupled with guideline-based child support, provided sufficient support to meet Judith's monthly budget of $13,584.

511

"is precluded from making findings of fact where the facts are in dispute." *Id.* at 294. Moreover, the *Tourtillott* court noted that Wis. Stat. § 805.17(2) provides that in all actions tried upon the facts without a jury, the trial court's findings of fact shall not be set aside unless clearly erroneous. *Tourtillott*, 190 Wis. 2d at 294. Therefore, our standard of review remains the same.[10] We will review the remand court's findings of fact under a clearly erroneous standard, and we will review its conclusions of law de novo. *See id.* at 295.

*Maintenance*

¶ 17. The touchstone of analysis in determining or reviewing a maintenance award is the list of statutory factors set forth in Wis. Stat. § 767.56. *See Kennedy v. Kennedy*, 145 Wis. 2d 219, 222, 426 N.W.2d 85 (Ct. App. 1988). These factors reflect and are designed to further the two primary objectives of maintenance—"to support the recipient spouse in accordance with the needs and earning capacities of the parties" and "to ensure a fair and equitable financial arrangement between the parties." *See id.*; *King v. King*, 224 Wis. 2d 235, 249, 590 N.W.2d 480 (1999). The support objective is fulfilled when the trial court considers the feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage and the length of time necessary to achieve this goal, if the goal is feasible. *Kennedy*, 145 Wis. 2d at 223. What will satisfy the fairness objective must be determined on a

---

[10] *See also In re Marriage of Crosetto*, 1 P.3d at 1187 (on appeal after remand, the appellate court gave deference to the successor judge's findings of fact which were based on the written record pursuant to stipulation).

case-by-case basis, considering the statutory factors. *Id.* A trial court erroneously exercises its discretion when it fails to fully consider the dual objectives of maintenance. *Forester v. Forester*, 174 Wis. 2d 78, 86, 496 N.W.2d 771 (Ct. App. 1993).

¶ 18. This court has previously recognized that this was not a long-term marriage necessitating as a starting point a presumption of an equal division of income. *Ladwig*, slip op. ¶ 8. The original trial court judgment required Daniel to pay Judith maintenance for three years, $3000 per month for eighteen months and then $1500 per month for the remaining eighteen months. *Id.*, ¶ 4. This court remanded the trial court's maintenance determination for the myriad of reasons set forth above and instructed that, on remand, "the circuit court should consider maintenance sufficient to allow Judith to maintain a standard of living reasonably comparable to that enjoyed during the marriage" and "explain its choice if maintenance is limited to a specific term." *Id.*, ¶ 15.

¶ 19. The remand court found maintenance of "$4700 per month for a period of 15 years to be appropriate." Its determination was made following a detailed nine-page written discussion of the maintenance issue in which it considered the original trial court record in light of each of the factors under Wis. Stat. § 767.56. Of note were the remand court's determinations that Judith's earning capacity was $31,000, conditioned upon additional schooling, and that she does not have the ability to become self-supporting at the standard of living she enjoyed during the marriage. Sec. 767.56(5) & (6). The remand court also determined that Daniel was finished with schooling at the time of his marriage to Judith and that the facts were "scant" as

to her contributions to his increased earning power, *see* § 767.56(9); however, it found that the facts reflect Judith's "contribution to be the child care services and economic support that a spouse is legally and morally required to provide." Other factors considered by the remand court were Daniel's contributions to Judith's daughter from her prior marriage and Judith's reluctance to accept the visitation of Daniel's two children from his prior marriage.

¶ 20. On appeal, Daniel contends that the remand court's maintenance award of $4700 per month for a fifteen-year period is excessive. Daniel's contention as to the amount of maintenance is premised on his contention that the remand court was required to accept Daniel's monthly budget for Judith of $6920, which includes $1000 per month for savings. However, for the reasons stated above, we conclude that the remand court was entitled to review the entirety of the record and arrive at its own conclusions. These conclusions included a determination that Judith's monthly expenses to maintain a predivorce standard of living total $13,584. Therefore, the remand court properly exercised its discretion when it arrived at a maintenance award of $4700, which when coupled with the child support obligation of $8455 per month, provides Judith with a reasonable amount of support to meet her monthly expenses.

¶ 21. With respect to the fifteen-year maintenance term, Daniel argues that because there is no support in case law for a maintenance award in a marriage of medium duration that exceeds the length of the marriage, we should reverse the remand court's determination as to the term of maintenance. We decline to do so. A determination as to the duration of maintenance is discretionary. *Wolski v. Wolski*, 210 Wis. 2d

183, 188, 565 N.W.2d 196 (Ct. App. 1997). There are no hard-and-fast rules in setting the duration of maintenance; rather, the facts of each individual case drive the determination. *See Kennedy,* 145 Wis. 2d at 222–23. When deciding whether to limit maintenance and for how long, the trial court must consider: (1) the ability of the recipient to become self-supporting by the end of the term at a standard of living reasonably comparable to that enjoyed before divorce, (2) the ability of the payor to continue support for an indefinite time, and (3) the need for the court to continue its jurisdiction concerning maintenance. *Plonka v. Plonka,* 177 Wis. 2d 196, 200–01, 501 N.W.2d 871 (Ct. App. 1993).

¶ 22. Here, the remand court found that Judith's earning capacity is approximately $30,000 and that she does not have the ability to become self-supporting at the standard of living enjoyed during the marriage. The remand court's award of maintenance until the parties are at retirement age necessarily takes into account the duration during which Daniel would have the ability to provide continued support through his employment as a physician and also accounts for that period during which the court's involvement with maintenance may be necessary. In light of the remand court's consideration of the relevant facts and applicable case law in arriving at a reasonable award of maintenance, we conclude that the remand court properly exercised its discretion.

*Child Support*

■■■

¶ 23. It is presumed that child support established pursuant to the percentage standard in Wis. Admin. Code § DCF 150 (2010) is fair. *See Abitz v. Abitz,* 155 Wis. 2d 161, 179, 455 N.W.2d 609 (1990). The court may deviate from the percentage standard if it finds by

the greater weight of the credible evidence that the use of the standard would be unfair to the child or the party requesting deviation. *Mary L.O. v. Tommy R.B.*, 199 Wis. 2d 186, 193, 544 N.W.2d 417 (1996). In determining unfairness, the trial court must consider the factors enumerated under WIS. STAT. § 767.511(1m).[11]

¶ 24. This court recognized that under the percentage standards for equal placement for the parties' two minor children, Daniel would be required to pay child support of $8455 per month. *Ladwig*, unpublished slip op. ¶ 17. On remand, the trial court considered all of the factors listed under WIS. STAT. § 767.511(1m). In considering the standard of living the children would have enjoyed had the marriage not ended in divorce, *see* § 767.511(1m)(c), the remand court found:

> The marital children from the Ladwig marriage would have enjoyed a highly comfortable lifestyle based on the familial expenditures of the family during the marriage, and will continue to do so . . . . Given the income of Dr. Ladwig there will continue to be sufficient income to fully support the children at the standard of living they enjoyed during the marriage and be fair to all.

The remand court gave "great weight" to the "best interests of the children" factor. *See* § 767.511(1m)(hm). The court found that "[t]he children can continue their

---

[11] WISCONSIN STAT. § 767.511(1m) provides:

DEVIATION FROM STANDARD; FACTORS. Upon request by a party, the court may modify the amount of child support payments determined under [§ 767.511(1j)] if, after considering the following factors, the court finds by the greater weight of the credible evidence that use of the percentage standard is unfair to the child or to any of the parties[.]

The statute then lists sixteen factors to be considered by the trial court. Sec. 767.511(1m)(a)-(i).

former standard of living with both parents despite separate households. The family lived on approximately $300,000 per year. There is sufficient income to support two households at the same standard they experienced during the marriage without a significant burden to either parent." Based on its consideration of the factors, the remand court found that Daniel had not carried his burden by the greater weight of credible evidence to persuade the court that the application of the percentage standards for child support would be unfair to either the children or himself.

¶ 25. Daniel argues on appeal that there is no basis in the record for a finding that the Ladwig children require child support of $8455 (or $16,910 when one considers equal placement) in order to maintain the standard of living that they would have enjoyed had the parties stayed married. However, it is evident from the remand court's consideration of the factors that it determined otherwise. It is for this reason that Daniel's reliance on *Parrett v. Parrett*, 146 Wis. 2d 830, 432 N.W.2d 664 (Ct. App. 1988), is misplaced.

¶ 26. In *Parrett*, this court concluded that it is reasonable to refuse to apply the guidelines when their use would result in a figure so far beyond the child's needs as to be irrational. *Id.* at 841. The *Parrett* court determined that there was no basis in the record for finding that the child had a need even approaching the guideline amount of $2813 per month and pointed out that the recipient's total monthly budget showed expenses of $1052. *Id.* at 835, 841–42. However, this court later discussed *Parrett's* holding in *Nelsen v. Candee*, 205 Wis. 2d 632, 556 N.W.2d 784 (Ct. App. 1996). In *Nelsen*, we noted that *Hubert v. Hubert*, 159 Wis. 2d 803, 815–16, 465 N.W.2d 252 (Ct. App. 1990), is a

corollary to *Parrett* providing that even when a guideline-based amount seems large on its face, the large award may be appropriate to maintain a child in a predivorce lifestyle. *Nelsen*, 205 Wis. 2d at 642. We instructed that:

> Because Paul is a high-income payor, the *Parrett* rule informs us that the guideline amount may be more than what the children actually need. But because Emily and Arthur are the children of a high-income physician, the *Hubert* corollary suggests that Paul's child support payments should be high so that the children continue to enjoy the lifestyle that they had before he and Susan divorced. The issue left for the family court, therefore, was to set an award within these guideposts.

*Nelsen*, 205 Wis. 2d at 643. Thus, the percentage standard may be applied to a high-income payor provided the court considers the relevant factors and reaches a reasoned conclusion that the use of the percentage standard would not be unfair to the payor. *See Mary L.O.*, 199 Wis. 2d at 194–96 (discussing *Parrett* and *Hubert*).

¶ 27. Here, the remand court expressly considered the parties' marital standard of living, the best interests of the children, and the budgets of each party before setting child support. As with maintenance, the setting of child support awards falls to the discretion of the trial court. *See Hubert*, 159 Wis. 2d at 813. Daniel strongly disputes many of the remand court's determinations with respect to the parties' lifestyle during the marriage; however, based on our review of the record, those findings are not clearly erroneous. As noted earlier, we will uphold the trial court's discretionary decision if the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a

reasonable judge could reach." *LeMere*, 262 Wis. 2d 426, ¶ 13 (citation omitted). We are satisfied that the remand court properly exercised its discretion.

### 2. *Cross-Appeal*

¶ 28. On cross-appeal, Judith contends that the remand court lacked authority to credit Daniel with $65,000 against child support owed to the parties' marital children.[12] The remand court determined that Daniel was entitled to the credit for amounts expended in support of Judith's daughter from a prior marriage. We agree with Judith that there is no basis upon which a trial court can reduce that support owed one child based on nonchild-support amounts paid to a nonmarital child. *See* Wis. Stat. § 767.59(1r); *Monicken v. Monicken*, 226 Wis. 2d 119, 130–31, 593 N.W.2d 509 (Ct. App. 1999) (a credit against child support may only be

---

[12] Daniel contends that Judith waived this argument by failing to raise this issue before the remand court and by acknowledging, postjudgment, the court's authority to grant a credit against the retroactive maintenance award. However, the waiver rule is a rule of judicial administration and, we may, in our discretion, decide to disregard a waiver and address the merits of an unpreserved issue. *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶ 17, 273 Wis. 2d 76, 681 N.W.2d 190. As has been noted previously by this court, it would be inappropriate to apply waiver when the party who waived the error is not the person who would be penalized. *See Fosshage v. Freymiller*, 2007 WI App 6, ¶ 17, 298 Wis. 2d 333, 727 N.W.2d 334 (refusing to rely on waiver when a father failed to object to the absence of a statutorily required guardian ad litem and the party impacted by the waiver would be the child). Because the persons impacted by Judith's waiver of the child support issue would be the Ladwig children, we likewise refuse to apply waiver and instead address the issue on its merits.

permitted as the legislature has determined under § 767.59(1r)). However, the remand court clearly found that "fairness" necessitated that "the $65,000 spent by [Daniel] on the support of [Judith's daughter from a prior marriage] . . . be a credit against any arrearage owed for child support."[13] While a credit against the child support owed to the parties' marital children is not authorized under statute, the benefit received by Judith and her daughter would be appropriately accounted for in the maintenance award or property division. We therefore reverse the remand court's determination as to this issue and remand for modification to either the maintenance award or property division.[14]

¶ 29. Finally, Daniel raises several issues regarding the details of the remand court's order, one of which we reject, the others we remand. First, we reject

[13] We acknowledge Judith's contention that $13,000 of the $65,000 allegedly spent on her daughter can be attributed to a certificate of deposit (CD) in her daughter's name. However, Judith offers no citation to the record as to the source of funding for the CD, and the documentation relied on by the remand court clearly includes the CD in the funds expended during the marriage in support of Judith's daughter. Because there is evidence in the record to support the remand court's finding as to the $65,000, it is not clearly erroneous. *See* Wis. Stat. § 805.17(2).

[14] We acknowledge Judith's argument that she is entitled to interest on the retroactve child support and maintenance awards. However, Judith failed to raise this particular issue with any prominence before the remand court. *See State v. Eugene W.*, 2002 WI App 54, ¶ 13, 251 Wis. 2d 259, 641 N.W.2d 467 (to avoid waiver, a party must raise an issue with sufficient prominence such that the trial court understands that it is called upon to make a ruling). We therefore decline to address it on appeal. *See Cashin v. Cashin*, 2004 WI App 92, ¶ 47, 273 Wis. 2d 754, 681 N.W.2d 255.

Daniel's contention that the remand court failed to consider the tax benefits of family support. A trial court is not obligated to order family support; rather, it may do so in its discretion. WIS. STAT. § 767.531. Further, the remand court's decision expressly states that it considered the tax consequences of its maintenance and child support order as calculated using the Mac Davis program,[15] the computer-generated results of which the court attached to its written decision.

■■■

¶ 30. Next, Daniel contends that the remand court erred in failing to "gross up" the $41,000 it credited him against his arrearages under the new maintenance award. In its original decision, the trial court stated, "So what I'm going to do is order substantially less maintenance than I otherwise would have by in effect treating the $41,000 [in property awarded to Judith] as an offset to what I think otherwise would be a fair maintenance award." In doing so, he noted that the $41,000 that Judith would owe to equalize the property division "grossing that up for the fact that maintenance is taxable . . . is similar to $60,000 to $65,000 in maintenance." The court added that "if for some reason the maintenance, say it were reversed on appeal, the property division would have to also be reopened to take account of this, or vice versa." Daniel now contends that because he must earn $68,000 in order to net $41,000 after taxes, he is entitled to a credit of $68,000, not the $41,000 ordered by the remand court. Daniel raised this issue on reconsideration before the remand court; however, the court did not address

[15] The Mac Davis computer program makes necessary tax calculations, such as after-tax income and the effect of tax exemptions.

the difference in tax treatment of maintenance and property division. While Judith may be correct in her speculation that the remand court determined the difference to be negligible, there simply is nothing in the record addressing Daniel's concern. We therefore remand this issue for further consideration.

¶ 31. Daniel also asserts that the remand court's calculation of maintenance was based on an incorrect allocation of dependency exemptions and a failure to account for real estate tax deductions. We agree that this may be the case. In determining the maintenance award, the remand court's decision references and incorporates a Mac Davis calculation which provided the basis for its maintenance award of $4700 per month which, with child support, would provide Judith's household with monthly income of $13,584. However, the Mac Davis calculation relied on by the remand court provides each party with one dependency exemption and no real estate tax deductions. When the parties raised arguments regarding the exemption allocations on reconsideration to the remand court,[16] the remand court expressly ordered that the allocations "would remain as found in the original judgment." The original judgment provides Judith with both dependency exemptions. As for the real estate tax deductions, Judith speculates that the remand court may have chosen to omit them from the calculations as too variable at the time of its decision; however, the remand court gave no indication that this was the case. We therefore remand these issues for reconsideration.

---

[16] We note that Daniel's letter brief on reconsideration requested that each party be given one exemption, whereas on appeal, Daniel argues that Judith should have been awarded both dependency exemptions.

## CONCLUSION

¶ 32. We conclude that the remand court properly reviewed the record and reevaluated the evidence pursuant to the stipulation on remand. We further conclude that the remand court properly exercised its discretion in determining both maintenance and child support. However, we reverse the remand court's $65,000 offset against Daniel's child support obligations and remand for the application of this offset to either the maintenance or property division award. Finally, we remand certain tax issues for further consideration, namely, the allocation of dependency exemptions, the inclusion of real estate tax deductions, and whether Daniel's maintenance arrearage credit of $41,000 should be "grossed up" to reflect tax implications. We therefore affirm in part; reverse in part and remand with directions.

¶ 33. No costs to either party on appeal.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded with directions.