COURT OF APPEALS
DECISION
DATED AND FILED

April 13, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2413-CR**

Cir. Ct. No. **2015CF130**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

  V.

MELVIN Y. GARCIA-PEREZ,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Rusk County: STEVEN P. ANDERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Melvin Garcia-Perez appeals from his convictions on multiple related felonies and from an order denying his postconviction motion.

He challenges a suppression ruling, an order requiring him to register as a sex offender, and the length of his sentences. We affirm the circuit court's decisions on each of these issues.

## BACKGROUND

¶2 The victim, Jane Hanks,[1] reported to law enforcement that while taking an evening walk, she had been attacked by an unknown man wielding a knife and wearing only underwear and a tank-top-type undershirt or t-shirt. Hanks said she fought off the assailant and he fled—leaving behind his knife, a flashlight, and a cell phone. Hanks turned those items over to Rusk County deputy sheriff Dan Glaze.

¶3 Glaze was able to trace the cell phone Hanks had recovered from the scene of the attack to Garcia-Perez. After Garcia-Perez was arrested, Glaze interviewed Garcia-Perez at the Rusk County Jail. Glaze used an interpreter service available to law enforcement through his department's cell phone to translate between English and Spanish during the interview. The interview was recorded both on regularly used audio-visual equipment at the jail and by Glaze's body camera. Using the translation service, Glaze provided Garcia-Perez with *Miranda* warnings.[2] Garcia-Perez then made several incriminating statements during the interview, including admissions that he had grabbed Hanks; that he had a knife with him; that his intentions were "not good but they were not that bad

---

[1] This matter involves the victim of a crime. Pursuant to WIS. STAT. RULE 809.86(4) (2019-20), we use a pseudonym instead of the victim's name. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] *See **Miranda v. Arizona**, 384 U.S. 436, 467-73 (1966).

2

either;" that he thought Hanks was pretty; and that he wanted to kiss her, touch her, hold her and have a relationship with her.

¶4 The State eventually charged Garcia-Perez with attempted first-degree intentional homicide, attempted first-degree sexual assault by use of a dangerous weapon, attempted second-degree sexual assault, first-degree reckless endangerment, second-degree reckless endangerment, aggravated battery, false imprisonment, and injury by negligent use of a dangerous weapon. Less than a week before trial, Garcia-Perez filed a suppression motion seeking to exclude from evidence the statement he made to law enforcement following his arrest. Garcia-Perez alleged that the *Miranda* warnings Glaze stated in English before Garcia-Perez agreed to speak with law enforcement were improperly translated into Spanish. As a result, Garcia-Perez alleged that he did not properly understand his constitutional rights, and his waiver of those rights was not knowingly and intelligently made.

¶5 At the suppression hearing, the defense enlisted the expertise of a state-certified Spanish interpreter, Darias Torres, who testified that he had reviewed a recording of Garcia-Perez's interview at least forty times. Torres noted that Glaze correctly and slowly read the *Miranda* warnings to Garcia-Perez in English. However, Torres identified "several errors, omissions, and failures to correctly interpret the conversation" by the telephonic interpreter who had contemporaneously translated the *Miranda* warnings into Spanish. Most significantly for this appeal, Torres did not hear the telephonic interpreter say "silencio," the Spanish word for silence. Torres stated that the telephonic interpreter's translation of the entire warning that Garcia-Perez had the right to remain silent was so "mumbled, distorted, misformed, misshapened, as to be

3

incomprehensible to the words themselves and even to the language that is spoken."

¶6    Torres acknowledged that Garcia-Perez indicated he understood his right to remain silent following the Spanish translation he was given, without requesting any clarification. Glaze also testified that Garcia-Perez did not seem confused during the interview and did not ask to have anything repeated. Garcia-Perez did not take the stand to testify about what he had understood the telephonic translator to say about his right to remain silent.

¶7    Due to short notice of the suppression hearing, the circuit court adjourned the hearing to afford the State an opportunity to find an interpreter to testify on its behalf. At the continued hearing two days later, the State advised the court that the discovery materials the State had previously provided included discs from both the jail equipment recording and body camera recording. The State asserted that the audio in the body camera recording was clearer than the audio in the jail equipment recording reviewed and testified to by Torres. In particular, the word "silencio" could be clearly heard on the body camera recording. The State also produced a new recording of Glaze playing his body camera recording for the telephonic interpreting service, with the original interpreter's Spanish translations being translated back into English by a new interpreter.

¶8    The circuit court denied the suppression motion. The court first observed that the problems with the Spanish translation heard on the jail equipment recording appeared to be technical issues with the recording rather than substantive defects within the translation itself. The court next noted that the second telephonic translator who listened to the body camera recording "was able to do a much better job [than Torres] at knowing what the original interpreter did"

4

with respect to translating the recitation of Garcia-Perez's rights. The court further noted that Garcia-Perez responded to translated questioning throughout the interview and gave no indication that he was confused or did not understand what was being said. Based upon the body camera recording, the court concluded the original telephonic translation of the ***Miranda*** warnings was "fair and accurate" and Garcia-Perez's statements to law enforcement were admissible.

¶9      The matter proceeded to trial, where the jury acquitted Garcia-Perez of the attempted homicide and sexual assault charges, and found him guilty of the five remaining counts. The circuit court ultimately sentenced Garcia-Perez to six years' initial confinement and four years' extended supervision on the first-degree reckless endangerment count, with shorter concurrent terms on the remaining counts. The court also ordered Garcia-Perez to register as a sex offender, stating, "I know he was acquitted of those charges but I can't think of any other motivation for this offense than that."

¶10     Garcia-Perez filed a postconviction motion asking the circuit court to reconsider requiring him to register as a sex offender. The court denied that motion after providing an expanded explanation for its decision, which we discuss more fully below. Garcia-Perez now appeals, challenging the court's suppression ruling and the requirement that he register as a sex offender, and further claiming that his sentences were unduly harsh.

## DISCUSSION

### 1. Suppression Motion

¶11     When reviewing a motion to suppress evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT.

5

§ 805.17(2); *State v. Harris*, 2017 WI 31, ¶9, 374 Wis. 2d 271, 892 N.W.2d 663. We will independently determine, however, whether the facts found by the circuit court satisfy applicable constitutional provisions. *Harris*, 374 Wis. 2d 271, ¶9.

¶12　Law enforcement officers are constitutionally required before performing a custodial interrogation to provide a suspect with *Miranda* warnings—i.e., that the suspect has the right to remain silent, that anything the suspect says could be used against him or her in a court of law, that the suspect has the right to a lawyer and the right to have the lawyer present while the suspect is giving a statement or being questioned, and that a lawyer will be appointed for the suspect if he or she cannot afford one. *See Miranda v. Arizona*, 384 U.S. 436, 467-73 (1966).  Before introducing into evidence a statement made by a defendant during a custodial interrogation, the State must establish by a preponderance of the evidence both that the statement was given voluntarily and that it was made with a knowing and intelligent understanding of the constitutional rights being waived. *State v. Hindsley*, 2000 WI App 130, ¶21, 237 Wis. 2d 358, 614 N.W.2d 48.

¶13　Absent countervailing evidence, a defendant's custodial statement may be admitted upon a prima facie showing that the defendant was informed of his or her rights, that the defendant indicated his or her understanding of the rights and a willingness to make a statement, that the statement sought to be introduced was in fact made by the defendant, and that the statement was not the result of duress, threats, coercion or promises. *State v. Lee*, 175 Wis. 2d 348, 360, 499 N.W.2d 250 (Ct. App. 1993).  When the *Miranda* warnings are translated for a defendant into a foreign language, the foreign language interpretation must be preserved in the record. *State v. Santiago*, 206 Wis. 2d 3, 22-23, 556 N.W.2d 687 (1996).  If the court is presented with countervailing evidence, it must determine,

under the totality of the circumstances, whether the defendant knowingly and intelligently waived his or her *Miranda* rights. *Lee*, 175 Wis. 2d at 361.

¶14    Here, Garcia-Perez makes no claim that his statements to law enforcement were given involuntarily.  He contends his statements were unknowing and unintelligent because he was not provided with an accurate Spanish translation of his *Miranda* warnings prior to giving them.  Alternatively, he argues that the garbled recording made with the jail equipment failed to provide an adequate basis for review of this issue.

¶15    Garcia-Perez's arguments fail to address the circuit court's finding that the body camera recording was clear enough to demonstrate that the original telephonic interpreter had provided a fair and accurate translation of the *Miranda* warnings.  That finding is not clearly erroneous.  The body camera recording of the *Miranda* warnings being given in English and translated into Spanish, in conjunction with the subsequent recording of a second interpreter translating the original interpreter's translation of the entire interview back into English, were sufficient to make the State's prima facie case.  Garcia-Perez did not testify or provide any other countervailing evidence to show that his waiver of his *Miranda* rights was unknowing or unintelligent.  Therefore, the court properly denied the suppression motion.

**2. Sex Offender Registry**

¶16    The Wisconsin Department of Corrections is required to maintain a sex offender registry containing the names and several categories of personal information about persons who are subject to the statutory registration requirements.  WIS. STAT. § 301.45(2)(a).  Registration as a sex offender is automatically required for defendants convicted of certain defined sex offenses.

7

*See* § 301.45(1d)(b) and (1g). In addition, a circuit court has the authority to order a defendant who has been convicted of one of a broader array of crimes not explicitly defined as sex offenses to register as a sex offender "if the court determines that the underlying conduct was sexually motivated ... and that it would be in the interest of public protection to have the person report." *See* WIS. STAT. §§ 301.45(1g)(e) and 973.048(1m).

¶17 An act is sexually motivated if it is done "for the actor's sexual arousal or gratification or for the sexual humiliation or degradation of the victim." WIS. STAT. § 980.01(5). In evaluating whether registration as a sex offender would be in the interest of public protection, the circuit court may consider the ages of and relationship between the defendant and the victim. The court may also consider whether the crime caused the victim bodily harm, whether the victim suffered from a mental illness or deficiency, the defendant's likelihood of committing future violations, and any other factor the court deems relevant. WIS. STAT. § 973.048(3)(a)–(g).

¶18 We review a circuit court's decision to place a person on the sex offender registry for an erroneous exercise of discretion. *See State v. Jackson*, 2012 WI App 76, ¶7, 343 Wis. 2d 602, 819 N.W.2d 288. We will uphold a discretionary decision as long as the circuit court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Ladwig v. Ladwig*, 2010 WI App 78, ¶15, 325 Wis. 2d 497, 785 N.W.2d 664 (citation omitted). Our review of a discretionary decision encompasses a court's postconviction reasoning. *State v. Helmbrecht*, 2017 WI App 5, ¶13, 373 Wis. 2d 203, 891 N.W.2d 412 (2016).

¶19     Garcia-Perez contends the circuit court erroneously exercised its discretion when it required him to register as a sex offender because he did not touch Hanks in a sexual manner during the assault and he was acquitted of the sexual assault charges. The court explained during the postconviction proceedings, however, that it viewed the offenses as sexually motivated because there was no other reasonable explanation for Garcia-Perez's behavior on the night in question. The court noted that Garcia-Perez passed a young woman who was walking or jogging alone on a rural highway at night, circled back behind her, grabbed her, put his hand over her mouth, forced her to the ground, sat on her chest while wearing a shirt and underwear but no pants, and produced a knife. The court reasoned that the attack was not a domestic abuse incident because Garcia-Perez did not know the victim. It was not an attempted robbery because Garcia-Perez did not demand the victim's wallet or valuables. Nor did the attack arise from some drunken encounter at a bar. The degree of violence involved ruled out Garcia-Perez's claim that he merely wanted to engage the victim in conversation. Further, Garcia-Perez admitted to law enforcement that he wanted to kiss and touch the victim and thought that she was pretty. The court concluded that the attack was an attempted sexual assault that had been thwarted because the victim fought back.

¶20     The circuit court further determined that requiring Garcia-Perez to register as a sex offender would protect the public from a person who had committed a random violent offense with a dangerous weapon and refused to accept responsibility for his actions. The court observed that Garcia-Perez's lack of criminal history or plausible explanation for why he had committed the offenses resulted in a lack of predictability as to what might trigger him to commit additional offenses, which in turn made him "all the more dangerous" and

rendered community supervision alone inadequate. We conclude the court properly exercised its discretion in requiring Garcia-Perez to register as a sex offender because it reasonably applied the relevant statutory provision to the facts of record during the postconviction proceedings.

### 3. Length of Sentences

¶21 Wisconsin courts have the inherent power to modify an unjust sentence. *See State ex rel. Friedrich v. Circuit Ct. for Dane Cnty.*, 192 Wis. 2d 1, 16 & n.7, 531 N.W.2d 32 (1995) (discussing inherent powers); *State v. Franklin*, 148 Wis. 2d 1, 9, 434 N.W.2d 609 (1989) (discussing modification of unjust sentences). While a circuit court may not revise a sentence based merely upon further reflection, it may revise a sentence if it concludes that the sentence was unduly harsh or unconscionable. *Cresci v. State*, 89 Wis. 2d 495, 504, 278 N.W.2d 850 (1979). A sentence may be considered unduly harsh or unconscionable only when it is "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *State v. Grindemann*, 2002 WI App 106, ¶31, 255 Wis. 2d 632, 648 N.W.2d 507 (citation omitted). There is a presumption that a sentence "well within the limits of the maximum sentence" is not unduly harsh. *Id.*, ¶¶31-32.

¶22 We ordinarily review a circuit court's determination that a sentence was not unduly harsh under the erroneous exercise of discretion standard. *Id.*, ¶30. Here, however, we have no such determination to review because Garcia-Perez did not argue in his sentence modification motion that his sentences were excessive. Rather, Garcia-Perez appears to be asking this court to make a de novo determination that his sentences were unduly harsh. Although we

question whether the issue was properly preserved under WIS. STAT. § 974.02(2), we will briefly address it because the State has not argued forfeiture.

¶23    Garcia-Perez contends that his sentences were so disproportionate to the offenses as to shock public sentiment because: (1) the offenses "did not result in any serious injury to the victim"; and (2) Garcia-Perez is "a young man in his early twenties." We do not find either of these assertions persuasive.

¶24    The components of the bifurcated sentences imposed were all well within the applicable penalty ranges. Because the sentences were imposed concurrently, the sentence on the first-degree reckless endangerment count—comprised of six years' initial incarceration and four years' extended supervision—was controlling as to the collective length of the sentences. The ten-year total confinement period imposed on the first-degree reckless endangerment count constituted just over a quarter of the maximum thirty-eight years of confinement Garcia-Perez faced on all five counts of conviction.[3]

¶25    There is nothing shocking about a ten-year sentence with a six-year period of initial confinement for a violent, sexually motivated attack on a stranger by an adult male in his twenties. The sentence is particularly appropriate given

---

[3] *See* WIS. STAT. §§ 941.30(1) (classifying first-degree reckless endangerment as a Class F felony); 941.30(2) (classifying second-degree reckless endangerment as a Class G felony); 940.19(6) (classifying aggravated battery as a Class H felony); 940.30 (classifying false imprisonment as a Class H felony); 940.24(1) (classifying injury by negligent use of a weapon as a Class I felony); 973.01(2)(b)6m. and (d)4. (providing maximum terms of seven and one-half years' initial confinement and five years' extended supervision for a Class F felony); 973.01(2)(b)7. and (d)4. (providing maximum terms of five years' initial confinement and five years' extended supervision for a Class G felony); 973.01(2)(b)8. and (d)5. (providing maximum terms of three years' initial confinement and three years' extended supervision for a Class H felony); and 973.01(2)(b)9. and (d)6. (providing maximum terms of one and one-half years' initial confinement and two years' extended supervision for a Class I felony).

11

that Garcia-Perez used a knife during the attack. The lack of serious injury to the victim was primarily attributable to her success in fighting off the attack, not to any restraint by Garcia-Perez. We conclude the sentence was not unduly harsh.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.